[Civ. No. 46299. First Dist., Div. Four. Apr. 30, 1980.]

FRANCHISE TAX BOARD, Petitioner and Respondent, v.
BRENT BARNHART et al., Objectors and Appellants;
FAIR POLITICAL PRACTICES COMMISSION,
Intervener and Respondent.

**COUNSEL**

Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz for Objectors and Appellants.

George Deukmejian, Attorney General, John A. Gordnier and W. Scott Thorpe, Deputy Attorneys General, for Petitioner and Respondent.

Thomas K. Houston, Robert M. Stern and Lee C. Rosenthal for Intervener and Respondent.

OPINION

**POCHÉ, J.**—This proceeding, brought before this court as an appeal, challenges an administrative subpoena duces tecum issued by the Franchise Tax Board (hereafter FTB) for records of Brent Barnhart, Charles C. Marson and Mary Willans-Izett (hereafter objectors) in connection with their work as registered lobbyists on behalf of the American Civil Liberties Union of Northern California.

In April of 1977, after considerable tactical skirmishing, objectors were each served with a subpoena duces tecum covering "all records relative to lobbyist activities maintained by [objectors], including but not limited to the following:

"1.   Books of original entry such as cash receipts and disbursements journal.

"2.   Receipts for expenditures.

"3.   Bank statements, deposit slips, cancelled checks, and checkbook.

"4.   · Petty cash records such as receipts, invoices, or vouchers.

"5.   Credit card statements and supporting vouchers.

"6.   Supporting documentation for any allocation between lobbyist and other activities or allocation to more than one lobbyist account.

"7.   Professional diaries, appointment calendars, or other listings of activities.

"8.   Correspondence with the Fair Political Practices Commission, Secretary of State, Attorney General, or other State agencies.

"9.   Worksheets used to complete report.

"10.   Employment agreements, contracts with clients, etc." When objectors refused to comply with the subpoenas, FTB sought and obtained from the superior court an order compelling production. Objectors sought review in this court by way of appeal.

In the background and sometimes in the foreground of this dispute is the Political Reform Act enacted by initiative in 1974. (Gov. Code, § 81000 et seq.)[1] One of its purposes is that the "activities of lobbyists should be regulated and their finances disclosed in order that improper influences will not be directed at public officials." (§ 81002, subd. (c).) It requires lobbyists to file periodic reports disclosing information related to their attempts to influence legislative or administrative action (§ 86107) and also mandates FTB to "make audits and field investigations with respect to reports and statements" filed by lobbyists. (§§ 90000, 91001, subd. (a).)

*Appealability*

A preliminary problem, not addressed by the parties, is the appealability of the order compelling compliance with the subpoenas. An order made under the authority of sections 11186-11188 requiring individual compliance with an administrative subpoena can be viewed as a final judgment in a special proceeding, appealable unless the statute creating the special proceeding prohibits such appeal. (See *Knoll* v. *Davidson* (1974) 12 Cal.3d 335 [116 Cal.Rptr. 97, 525 P.2d 1273].) Perhaps because sections 11186-11188 do not specifically prohibit an appeal, two reported decisions, without discussion of this issue, have treated such an order as appealable. (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462 [89 Cal.Rptr. 290] and *Fielder* v. *Berkeley Properties Co.* (1972) 23 Cal.App.3d 30 [99 Cal.Rptr. 791].) Neither decision, however, involved a subpoena authorized by the Political Reform Act.

We are instructed by the Political Reform Act itself to construe it "liberally" to accomplish its purposes (§ 81003) one of which is that "adequate enforcement mechanisms should be provided to public officials and private citizens in order that this title will be vigorously enforced." (§ 81002, subd. (g).) ▮ Because of the length of time required to appeal such an order, to construe the act as making such orders appealable would not be a "liberal" construction but would tend to frustrate vigorous enforcement of the Political Reform Act. Accordingly, we construe the Political Reform Act as prohibiting appeal of an order compelling compliance with subpoenas issued thereunder. We thus treat this proceeding as properly an application for writ of prohibition.

---

[1] All references are to the Government Code unless otherwise noted.

*The power to issue subpoenas*

■ Objectors' initial complaint is that the FTB does not have the authority to issue subpoenas in connection with the performance of its auditing functions outlined in the Political Reform Act. Unquestionably there is no *express* subpoena power granted therein to the FTB. Instead, that board finds its power in statutes that predate the Political Reform Act by almost 30 years. Section 11180 provides that the head of each department may make investigations concerning: "(a) [a]ll matters relating to the business activities and subjects under the jurisdiction of the department...[and] (c) [s]uch other matters as may be provided by law." Section 11181 states that "[i]n connection with these investigations...he may:...(e) [i]ssue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing, or proceeding pertinent or material thereto in any part of the State."

Although there is no dispute that the FTB is a "department" as that term is used in section 11180,[2] that is where agreement ends. Objectors contend that the auditing of lobbyists is not one of the "subjects under the jurisdiction" of the FTB and that such audits or investigations are not within the meaning of "such other matters as may be provided by law."

To put these arguments in context an overview of the Political Reform Act helps. It concerns "elections and different methods for preventing corruption and undue influence in political campaigns and governmental activities. Chapters 1 and 2 contain general provisions and definitions, including a severability provision. Chapter 3 establishes the commission. Chapter 4 establishes disclosure requirements for candidates' significant financial supporters. Chapter 5 places limitations on campaign spending. Chapter 6 regulates lobbyist activities. Chapter 7 establishes rules relating to conflict of interest. Chapter 8 establishes rules relating to voter pamphlet summaries of arguments on proposed ballot measures. Chapter 9 regulates ballot position of candidates. Chapter 10 establishes auditing procedures to aid enforcement of the law, and chapter 11 imposes penalties for violations of the of the act." (*Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 37 [157 Cal.Rptr. 855, 599 P.2d 46].)

---

[2]At oral argument the parties agreed that the Franchise Tax Board *is* a "department" within the meaning of sections 11180-11183.

■

Chapter 10 (§§ 90000-90007) mandates the FTB to make audits and field investigations, specifies when this shall be accomplished, who shall be the subject thereof and what shall be done with the information obtained. Specifically the FTB is given the power to engage in "audits and field investigations" with respect to reports and statements filed under chapter 4 (establishing disclosure requirements for candidates' significant financial supporters) and chapter 6 (regulating lobbyist activities). (§ 90000.)

In our view these audits and field investigations of lobbyists are within the meaning of section 11180—both subjects under the jurisdiction of the FTB and subjects with respect to which the FTB may investigate as "provided by law." In other words, although the Political Reform Act does not itself confer subpoena power on the FTB, it adds to the matters which are under the jurisdiction of the FTB and it increases the FTB's investigative arena. Such additions of auditing and investigation are subject to the subpoena power previously granted in section 11181. Unlike objectors, we find nothing in the Political Reform Act which is inconsistent with the assertion of such subpoena power by the FTB.

It is true, as objectors claim, that the Waxman-Dymally Act (Elec. Code, § 11500 et seq.) specifically authorizes issuance of subpoenas in connection with audits while the subsequently enacted Political Reform Act does not. From that we are asked to infer that the drafters of the Political Reform Act intended to deny subpoena power to the FTB. Irrespective of the merits of such reasoning in normal legislative interpretation, here no such conclusion may be drawn from the sequence of *enactment* because the Political Reform Act was in final form for presentation to the electorate as an initiative measure two months prior to the enactment of Waxman-Dymally. (See Elec. Code, §§ 3502-3503.) Under the circumstances, the failure of the Political Reform Act to specifically authorize the FTB to issue subpoenas is not evidence of any intention of the drafters of it to exclude such power.

Objectors also argue that the Political Reform Act contemplates audits on the model of the private sector without subpoena power. They offer an extended analysis of the scope of the audit function envisioned by a regulation adopted by the commission (Cal. Admin. Code, tit. 2, § 18915) providing that audits and investigations conducted by the FTB shall be made: "(a) To the extent applicable, in accordance with generally accepted auditing standards as prescribed by the authoritative

bodies of the accounting professions; and (b) To the extent necessary, using other tests of accounting records and ordering procedures appropriate under the circumstances of each audit for investigation." If that regulation is an expression preventing use of the subpoena power, it is an odd way of saying so. We do not read the resolution as having any application to or effect on the availability of the subpoena power. Nor do we understand the regulation to be any expression whatsoever on the propriety of the use of such power by the FTB.

Additionally, objectors contend that because under the Political Reform Act the Fair Political Practices Commission has explicit statutory subpoena power (§ 83118)[3] and the FTB does not, this grant to the commission should be read as a limitation on the powers of other state agencies (such as FTB) given responsibilities under that act. Because that explicit grant is also specifically limited to the *"Commission's"* duties or to the "exercise of *its* power," (§ 83118, italics added) it cannot be read as a limit on the powers of other agencies given responsibilities under the Political Reform Act.

*Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33 [157 Cal.Rptr. 855, 599 P.2d 46].

Having found explicit statutory power for the FTB to issue subpoenas in section 11181, in normal course we would pass to objectors other contentions each of which raises constitutional claims. However, during the pendency of this proceeding the California Supreme Court held invalid section 86202 because it had not been "'closely drawn to avoid unnecessary abridgment of associational freedoms.'" (*Fair Political Practices Com.* v. *Superior Court, supra*, 25 Cal.3d 33 at p. 45.) That section had forbidden lobbyists from making or arranging campaign contributions. The same decision announced a similar fate for subdivisions (d) and (e) of sections 86107 and 86109. These provisions were struck down because they improperly conditioned the right to redress of grievances upon "disclosure of irrelevant private financial matters unrelated to the petition activity." (*Id.*, at p. 49.)

---

[3]Section 83118 provides: "The Commission may subpoena witnesses, compel their attendance and testimony, administer oaths and affirmations, take evidence and require by subpoena the production of any books, papers, records or other items material to the performance of the Commission's duties or exercise of its powers."

The FTB admits that the *Fair Political Practices* decision "narrowed the scope" of the subpoenas it seeks to enforce. By analogy to the situation in *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 948 [154 Cal.Rptr. 503, 593 P.2d 200], where the Supreme Court remanded to the trial court a dispute concerning attorney fees for reconsideration of the issue in light of an intervening statute, the determination of how and to what extent the recent *Fair Political Practices Com.* case, *supra*, affects the scope of the challenged subpoenas should be left to the trial court. That court after a full and fair factual hearing could, for example, narrow the thrust of the subpoenas or could require redrafting of them prior to any enforcing order.

The order compelling compliance with the challenged subpoenas is vacated and the cause is remanded for reevaluation of the permissible scope of the subpoenas in light of *Fair Political Practices Com.* v. *Superior Court, supra*, 25 Cal.3d 33.

Rattigan, Acting P. J., and Christian, J., concurred.