[No. G012006. Fourth Dist., Div. Three. Mar. 24, 1993.]

JOSE MILLAN, as Deputy Labor Commissioner, etc., Petitioner, v.
RESTAURANT ENTERPRISES GROUP, INC., Respondent.

478

## COUNSEL

H. Tomas Cadell, Jr., and Miles E. Locker for Petitioner.

Musick, Peeler & Garrett and Dana D. Howells for Respondent.

## OPINION

**MOORE, J.**—The Restaurant Enterprises Group, Inc. (appellant) appeals an order by the superior court compelling production of documents pursuant to an administrative subpoena duces tecum (subpoena) issued by the Division of Labor Standards Enforcement (DLSE). The DLSE seeks to determine whether appellant is subject to California Labor Code section 227.3[1], which prohibits the forfeiture of vested vacation time and requires the payment of accrued vacation time to employees upon separation from employment.

Appellant contends that because it maintained a Voluntary Employees' Beneficiary Association Trust (VEBA) under the Employee Retirement Income Security Act (29 U.S.C. § 1001 et seq., ERISA), the DLSE lacks authority to enforce California law on vacation pay. It also argues the subpoena fails to meet constitutional standards for enforcement because it is not for a lawful purpose, seeks irrelevant records, and is excessive for the purposes of its inquiry.

### THE STATUTORY SCHEME AND PROCEDURAL BACKGROUND

An administrative subpoena may be enforced if it is issued "for 'a *lawfully authorized purpose,* within the power of [the legislative body] to command.'" (*Craib* v. *Bulmash* (1989) 49 Cal.3d 475, 482 [261 Cal.Rptr.

---

[1] All statutory references are to the Labor Code unless otherwise specified.

686, 777 P.2d 1120], quoting *Okla. Press Pub. Co.* v. *Walling* (1946) 327 U.S. 186, 209 [90 L.Ed. 614, 629-630, 66 S.Ct. 494, 166 A.L.R. 531].) The documents demanded must be relevant and " '*adequate, but not excessive,* for the purposes of the relevant inquiry.' " (*Ibid.*)

Section 227.3 provides that employees must receive vested vacation pay upon separation from employment.[2] "The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. . . . [A] proportionate right to a paid vacation 'vests' as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay. [Fn. omitted.]" (*Suastez* v. *Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 784 [183 Cal.Rptr. 846, 647 P.2d 122, 33 A.L.R.4th 254], hereafter *Suastez.*)

In *Suastez, supra,* 31 Cal.3d 774, the Supreme Court held that although employers have no obligation to provide vacation benefits, if such benefits are provided they are earned and vest on a daily basis. Thus, prorated vacation benefits must be paid on termination of employment even in cases where employees do not meet prerequisites of the employer's policy, such as attaining a full year of employment. (*Id.* at pp. 781-784.) After *Suastez,* certain types of vacation pay policies which were formerly permissible, such as policies allowing the forfeiture of vacation pay before one full year of service or which required employees to "use or lose" vacation pay by a specific date, were prohibited.

After *Suastez* was filed, a group of employer trade associations brought suit in federal court seeking a declaration that section 227.3, the DLSE's enforcement policy, and *Suastez* itself, were preempted by ERISA. The federal district court entered judgment in favor of the trade associations and issued an injunction prohibiting the DLSE from processing any vacation pay claims under section 227.3.

On appeal, the Ninth Circuit Court of Appeals considered whether ERISA preempted state regulation of *unfunded* vacation benefits policies, paid out of

[2]That section states in part: "[W]henever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness."

general assets of the employer as part of regular payroll while an employee is on vacation, and concluded it did not. (*California Hosp. Ass'n* v. *Henning* (9th Cir. 1985) 770 F.2d 856, 859-861, hereafter *Henning*.) Following the Ninth Circuit's reversal of the district court's order, and its holding that payment of vacation benefits from an employer's general assets is outside the scope of ERISA, the district court issued a new order ruling that the DLSE has jurisdiction over any *unfunded* vacation pay policy and that ERISA preemption applies only to *funded* vacation plans.

In *Massachusetts* v. *Morash* (1989) 490 U.S. 107 [104 L.Ed.2d 98, 109 S.Ct. 1668] (hereafter *Morash*), the United States Supreme Court adopted *Henning*'s reasoning and holding. The court held that an employer's vacation program did not constitute an "employee welfare benefit plan" within the meaning of ERISA, where vacation benefits were paid out of the employer's general assets. As the court stated, "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees' benefits from accumulated funds. [*Henning, supra,* 770 F.2d at page 859.] To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator. Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address. If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed—a danger Congress chose not to regulate in ERISA." (*Morash, supra,* at p. 115 [104 L.Ed.2d at pp. 108-109].) *Morash* thus established that ERISA does not cover a program "whose vacation benefits come from the same fund from which [employees] receive their paychecks." (*Id.* at p. 120 [104 L.Ed.2d at p. 112].)

On September 30, 1986, the DLSE issued a bulletin known as interpretive bulletin No. 86-3. In that bulletin, the DLSE noted many employers were designing vacation plans to comply with *Henning* and offered guidance on questions frequently asked by employers. The bulletin detailed the DLSE's enforcement policy as follows: "DLSE will accept only those claims for vacation pay which would be paid out of the employer's general assets. Claims for vacation pay filed against a third party such as a 'benefit association' or 'trust' or 'fund' have not heretofore been processed because such entities have customarily been part of a collective bargaining agreement. Papers filed in [*Henning*] suggest that there may be vacation pay arrangements which are paid neither from general assets nor pursuant to collective bargaining agreements. Any claim involving [a funded] plan . . .

created in accordance with and subject to the provisions of ERISA must be pursued through state or federal courts. If an employer opposes a vacation pay claim by alleging ERISA coverage on any of the above grounds, enforcement as to that claim will be stayed for a reasonable period to allow the employer to submit evidence in substantiation of that defense."

The bulletin confirmed the DLSE's existing policy to exclude all *funded* vacation plans and assert jurisdiction over *unfunded* plans only. The DLSE never conceded it lacked jurisdiction over unfunded plans of any nature, including unfunded VEBA's.

In 1990, the United States District Court ruled that a vacation benefits trust created by an employer was not an ERISA employee welfare benefit plan where the trust maintained virtually no accumulated funds in its account. (*Czechowski* v. *Tandy Corporation* (N.D.Cal. 1990) 731 F.Supp. 406, hereafter *Czechowski*.) The court refused to allow the employer to use an "advance and recapture" method as a means of evading section 227.3, stating: "Tandy disburses payments of vacation benefits directly to . . . employees from its own general funds; the VEBA trust then reimburses Tandy on a quarterly basis for the moneys Tandy has disbursed to employees, and Tandy simultaneously gives a check to the VEBA trust for the same amount it has received from the VEBA trust . . . . Though the VEBA trust, since its inception, has disbursed over $1 million in vacation pay in this manner, it has never held more than $1,000." The court concluded *Morash's* reasoning applied because that VEBA did not "implicate any concerns over mismanagement since no funds are accumulated in it. Further, the risk an employee bears is precisely the same as his employment risk: that he may be terminated and cease to receive wages and other compensation. The VEBA trust, therefore, is not a plan covered by ERISA." (*Id.* at p. 408.)

The DLSE contends that after the publication of *Czechowski*, it became aware that employers might use a VEBA trust as a subterfuge to deny separating employees payment of unpaid vacation wages. Then, in April 1991, two of appellant's former employees filed claims with the DLSE for payment of earned and unpaid wages. The DLSE issued subpoenas seeking records relating to the VEBA trust. The DLSE contended the documents were necessary to ascertain whether the VEBA was funded and whether it made direct payments of employees' vacation benefits, and to determine whether appellant was subject to the provisions of section 227.3. Appellant settled the claims filed by its two ex-employees, but the DLSE continued its investigation of appellant's vacation pay practices.

On July 11, the DLSE served appellant with a new subpoena seeking records showing whether the VEBA was funded and how it was operated.

When appellant did not comply, the DLSE filed a petition to compel production, seeking production of documents in 19 categories related to the VEBA. The matter was referred to a commissioner (Code Civ. Proc., § 259), who recommended the court grant the request for production of 17 categories of documents, with 2 categories to be produced thereafter if it was determined that appellant's vacation plan is such that California law is not preempted by ERISA.

The court adopted the commissioner's report, but thereafter ordered compliance with only nine categories of items.[3] The court stayed compliance to allow appellant to file the instant appeal.

## DISCUSSION

### I. *Is the Order Appealable?*

Following the briefing of this matter, the DLSE filed a motion to dismiss the appeal, or, in the alternative, to treat it as a petition for writ, contending the order compelling compliance with the subpoena is not appealable. Government Code sections 11187 and 11188 allow judicial enforcement of subpoenas issued by state executive departments.[4] There are cases which have held that orders compelling compliance with a subpoena must be reviewed by writ. (See *Franchise Tax Bd.* v. *Barnhart* (1980) 105 Cal.App.3d 274, 277 [164 Cal.Rptr. 331]; *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 50-51 [162 Cal.Rptr. 786].) The DLSE relies heavily upon *Pacific-Union*

---

[3]Appellant was not compelled to produce documents in 10 categories, including other forms filed by the VEBA with the Internal Revenue Service (IRS); blank forms used by the VEBA for transmitting information about the funding of the trust and the payment of benefits; memos, reports and correspondence between the VEBA and participating employers concerning the VEBA's establishment, funding or operation; memos, reports and correspondence between the VEBA and the United States Department of Labor, the IRS, and the Franchise Tax Board (FTB); documents issued by appellant to its employees in all job classifications, concerning the provision of paid vacations, the rate of accrual of vacation time, rules regarding the accrual and use of vacation time, and the payment or forfeiture of accrued and unused vacation time; and employment records for all employees who voluntarily or involuntarily separated from employment from January 1, 1988, to the present.

[4]Section 11187 provides in pertinent part: "If any witness refuses to . . . produce any papers required by . . . subpena . . . the head of the department may petition the superior court . . . for an order compelling the person to . . . produce the papers required by the subpena before the officer named in the subpena."

Section 11188 provides in part: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court . . . and then and there show cause why he has not . . . produced the papers as required. . . . If it appears to the court that the subpoena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpoena at the time and place fixed in the order . . . and produce the required papers. Upon failure to obey the order, the person shall be dealt with as for contempt of court."

*Club* v. *Superior Court* (1991) 232 Cal.App.3d 60 [283 Cal.Rptr. 287]. However, that case does not solve the problem. There, a private club filed both an appeal and an extraordinary writ because of the confusion as to whether an order enforcing a subpoena is appealable or reviewable by extraordinary writ only. The Court of Appeal noted the confusion in the area, then concluded, "[e]ven if the order is directly appealable, we would review the order by writ in this case in the interests of judicial economy and expediency." (*Id.* at pp. 68-69, fn. 3.) Here, by contrast, the case has been fully briefed by the parties and is ripe for decision. Thus, the interests of judicial economy and expediency would not be served by treating the appeal as a petition for extraordinary writ.

■ Moreover, the better view is that "orders requiring compliance with the subpoenas are appealable as final judgments in special proceedings . . . ." (*Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138, 1140 [212 Cal.Rptr. 811]; see also *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 343 [116 Cal.Rptr. 97, 525 P.2d 1273]; *In re De La O* (1963) 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705].)

Numerous cases, including cases from our Supreme Court, have decided appeals taken from similar orders on the merits without discussion of the appealability issue. (See, e.g., *Younger* v. *Jensen* (1980) 26 Cal.3d 397 [161 Cal.Rptr. 905, 605 P.2d 813]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55]; *Fielder* v. *Berkeley Properties Co.* (1972) 23 Cal.App.3d 30 [99 Cal.Rptr. 791].) Inasmuch as the Supreme Court is among those courts which have assumed the appealability of such orders, we conclude such an order is appealable, decline the DLSE's request to treat the matter as a writ petition, and address the contentions raised on the merits. (See *Kizer* v. *Sulnick* (1988) 202 Cal.App.3d 431, 435, fn. 1 [248 Cal.Rptr. 712]; *Tom* v. *Schoolhouse Coins, Inc.* (1987) 191 Cal.App.3d 827, 828-829, fn. 1 [236 Cal.Rptr. 541].)

The issue on this appeal, whether the subpoena meets constitutional standards for enforcement, is a matter of law and is reviewed de novo. (*Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117]; *Simpson* v. *Unemployment Ins. Comp. Appeals Bd.* (1986) 187 Cal.App.3d 342, 350 [231 Cal.Rptr. 690].) Of course, allegations by the parties which are not supported by appropriate reference to the record will be disregarded. (Cal. Rules of Court, rule 15(a); *Pulver* v. *Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491].)[5]

---

[5]For example, appellant contends the VEBA has assets of over one-half million dollars and that the DLSE has records showing the VEBA has substantial assets. Neither of those

II. *Is the Subpoena for a Lawful Purpose Within DSLE's Power to Command?*

■ Appellant first argues the DLSE lacks investigative authority over the payment of vacation benefits. However, section 95, subdivision (a) provides the DSLE "may enforce the provisions of this code and all labor laws of the state the enforcement of which is not specifically vested in any other officer, board or commission." The DLSE is therefore empowered to enforce section 227.3, which prohibits the forfeiture of vested vacation time upon an employee's separation from employment and requires employers to pay wages to separating employees for all accrued vacation time. Pursuant to sections 201 and 202, all wages that are earned and unpaid at the time of separation from employment, including wages for unused vacation time, must be paid immediately upon discharge or within 72 hours of the employee's resignation.[6] Section 203 provides for the imposition of penalties against the employer for the willful failure to timely pay an employee's final wages.[7] Thus, under the statutory scheme, an employer's failure to pay wages for a separating employee's accrued vacation time violates section 227.3, as well as either section 201 or 202, and subjects the employer to penalties under section 203. The DLSE is entrusted with responsibility for enforcing these code sections.

Appellant also contends the subpoena exceeds the scope of the DLSE's authority because it seeks documents that are required to be filed with the

---

assertions is supported by references to the record and, accordingly, we disregard them. (*Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712]; *Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [213 Cal.Rptr. 69].

Appellant claims the reason the evidence is not before this court is because of the "happenstance of [appellant] having to file an early notice of appeal to keep a stay in effect . . . ." Appellant also argues the evidence would be a part of the record, but we denied its request to augment. However, appellant's motion to augment was not arbitrarily denied. In its motion, appellant relied upon self-serving letters from counsel asserting that the VEBA was funded, that the DLSE never disputed that contention, and that, therefore, appellant was entitled to ERISA preemption. Because the motion was devoid of admissible evidence on the points of contention, it was denied.

[6]Section 201 provides in part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Under section 202: "If an employee not having a written contract for a definite period quits his or her employment, his wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

[7]That section provides in part: "If an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages . . . shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days. . . . [¶] *Suit* may be filed for such penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise."

IRS, the FTB, and the United States Department of Labor. We disagree. The documents sought are necessary so the DLSE can enforce the labor laws which it is empowered to enforce. Neither the IRS, the FTB, nor the United States Department of Labor has authority to enforce the provisions of the Labor Code.

Appellant also claims there must be an assignment of a pending claim before the DLSE can take action with respect to vacation pay. However, neither section 95, subdivision (a), nor Government Code section 11180, which empowers the labor commissioner to investigate and prosecute actions concerning all matters under the department's jurisdiction, require the assignment of a pending claim before the DLSE can take action. In fact, section 96.7 provides that the labor commissioner may collect benefits *without assignment*: "The Labor Commissioner, after investigation and upon determination that wages or monetary benefits are due and unpaid to any worker . . . , may collect such wages or benefits on behalf of the worker without assignment of such wages or benefits to the commissioner." Thus, the DLSE's power to conduct an investigation to determine whether wages are owed is not dependent upon the existence of currently pending individual wage claims. As the Supreme Court has stated, "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' " (*Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462], quoting *United States* v. *Morton Salt Co.* (1950) 338 U.S. 632, 642-643 [94 L.Ed. 401, 410-411, 70 S.Ct. 357].)

██  An administrative agency has the authority to conduct an investigation and to subpoena records to determine whether the entity under investigation is subject to the agency's jurisdiction and whether there have been violations of provisions over which the agency has jurisdiction. (See *Okla. Press Pub. Co.* v. *Walling, supra*, 327 U.S. at pp. 215-217 [90 L.Ed. at pp. 633-634]; *Younger* v. *Jensen, supra*, 26 Cal.3d at p. 405.) ██  For that reason, the subpoena here is for a lawfully authorized purpose within the DLSE's enforcement power and is enforceable. (See *Craib* v. *Bulmash, supra*, 49 Cal.3d at p. 482.)

██  Next, appellant argues the DLSE's investigation is prohibited by the declaratory judgment in *Henning, supra*, 770 F.2d 856. The argument is

based upon a misinterpretation of the case. *Henning* held that ERISA does not preempt state regulation of unfunded vacation plans where employees' vacation benefits are paid out of the employer's general assets. (*Henning, supra,* at pp. 859-861; accord *Morash, supra,* 490 U.S. at p. 120 [104 L.Ed.2d at p. 112].) ERISA itself defines an "employee welfare benefit plan" as a "plan, fund or program . . . established or . . . maintained for the purpose of providing for its participants or their beneficiaries . . . vacation benefits . . . ." (29 U.S.C. § 1002(1).) Obviously, a VEBA from which benefits are provided to employees out of the employer's general assets rather than out of the VEBA's funds is not maintained for the purpose of providing vacation benefits, and is not regulated by ERISA. Nothing in *Henning* prohibits the DLSE from conducting an investigation to determine whether appellant's VEBA is subject to the provisions of section 227.3.

It is appellant's burden to prove facts necessary to establish it is entitled to ERISA preemption. (*Marshall* v. *Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1052 [10 Cal.Rptr.2d 72, 832 P.2d 573]; *Kanne* v. *Connecticut General Life Ins. Co.* (9th Cir. 1988) 867 F.2d 489, 492, fn. 4.) That is apparently a burden appellant is unwilling to shoulder. Appellant stridently contends the VEBA is funded at the present time and is an ERISA plan. However, it is unwilling to permit the DSLE to examine the records to verify that fact.[8]

Appellant seeks to rely on *Marshall* v. *Bankers Life & Casualty Co., supra,* 2 Cal.4th 1045 (hereafter *Marshall*) in support of its assertion there is no requirement under ERISA that a vacation plan be funded. The suggestion is that state regulatory agencies no longer have jurisdiction even over unfunded plans. However, *Marshall* does not so hold. In *Marshall*, the Supreme Court, dealing with a group health insurance policy, held that an ERISA plan may be established despite the fact that an employer has minimal involvement in plan administration and no involvement in claims processing. (*Id.* at p. 1049.) The court stated that "an employer that—in order to provide its employees with any of the benefits specified in ERISA—purchases a group insurance policy, contributes towards premiums and remits them to the insurer, and retains authority to terminate the policy or change its terms has

---

[8]At oral argument, appellant's counsel bemoaned the fact that the subpoena was burdensome and excessive because it seeks a voluminous amount of documents. However, counsel flatly rejected the suggestion that appellant simply provide authorizations and permit the DSLE to examine the records at its own time and expense. When pressed to state precisely which documents it is willing to make available to the DSLE to prove the VEBA is funded, counsel stated appellant is willing to select the records from *one month of its current operations*. Counsel contended the issue before us is a "federal question" and expressed confidence that the federal court will find the VEBA is an ERISA plan. However, she conceded appellant has yet to initiate proceedings to obtain that finding.

'established or maintained' an ERISA plan regardless of whether it also processes claims or otherwise administers the policy." (*Id.* at p. 1057.) The case did not deal with vacation pay and does not alter the fact that ERISA does not preempt state regulation of unfunded vacation plans where employees' vacation benefits are paid out of the employer's general assets. (*Morash, supra,* 490 U.S. at p. 120 [104 L.Ed.2d at p. 112]; *Henning, supra,* 770 F.2d at pp. 859-861.)

As the United States Supreme Court stated in *Morash,* regulations promulgated by the Secretary of Labor "provide that numerous 'payroll practices,' including the payment of vacation benefits 'out of [an] employer's general assets' rather than from a trust fund, are not employee welfare benefit plans within the meaning of ERISA." (*Morash, supra,* 490 U.S. at pp. 117-118 [104 L.Ed.2d at pp. 110-111], fn. omitted; see also 29 C.F.R. § 2510.3-1(b)(1).) The DSLE is, therefore, entitled to the subpoenaed documents to determine whether appellant is subject to its jurisdiction and whether there have been violations of provisions over which the DSLE has jurisdiction.

Appellant notes that the district court in *Czechowski* concluded that the VEBA there was not a plan covered by ERISA because it never held more than $1,000. (*Czechowski, supra,* 731 F.Supp. at p. 408.) Appellant argues there is no minimum funding requirement for ERISA preemption. It makes this argument out of one side of its mouth, while arguing that the DSLE's concern should be with whether it is properly funded now. In any event, this is discovery, not enforcement. The issue at this stage of the discovery proceedings is not what amount of money is required to be in a fund. Rather, the issue is whether the employer in fact maintains a fund, in which case it is entitled to ERISA preemption, or whether employees' vacation benefits are paid out of general assets, in which case it is not.

If the DSLE determines from the records produced that it has jurisdiction, appellant will have an opportunity to meet its burden of proving that the VEBA is funded. As the Supreme Court noted in *Marshall,* "The existence of an ERISA plan is a question of fact, to be answered in light of all of the surrounding circumstances as viewed by a reasonable person." (*Marshall, supra,* 2 Cal.4th at p. 1052.) One of the factors in determining whether ERISA preemption applies is the source from which the employees' vacation benefits are paid. As the Supreme Court stated, "To hold that a plan exists, the court must be able to determine 'whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, *source of financing,* and procedures for receiving benefits.' " (*Id.* at p. 1054, italics added, quoting *Donovan* v. *Dillingham* (11th Cir. 1982) 688 F.2d 1367, 1373.)

■ Appellant also asserts the DLSE is estopped from enforcing the subpoena. The argument is based upon the DLSE's interpretative bulletin No. 86-3, which dealt with enforcement of section 227.3, as interpreted in *Suastez, supra,* 31 Cal.3d 774. Appellant claims it relied on the DLSE's enforcement position as announced in that bulletin, and that the bulletin says nothing about a different enforcement policy for funded plans depending on any level of funding or on the use of an "advance and recapture" system for distributing benefits. We conclude there is no basis for estoppel.

■ "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) ■ Although estoppel may be asserted against the government in the interest of justice (*City of Los Angeles* v. *Cohn* (1894) 101 Cal. 373, 377 [35 P. 1002]), it will not be applied if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public." (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124, 175 A.L.R. 747]; see also *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].)

■ In essence, appellant argues that the DLSE did not enforce regulations against VEBA's which were not sufficiently funded in the past, so it should be precluded from requiring appellant to provide documentation to establish whether its VEBA is funded and operated in a manner which would preempt enforcement of section 227.3 in light of ERISA. But the subpoena merely requires appellant to submit evidence to substantiate its claim that it is not subject to the provisions of section 227.3. It merely requires compliance with the exact provisions of paragraph 1 of interpretive bulletin No. 86-3, in effect since September 1986, which states: "DLSE will accept only those claims for vacation pay which would be paid out of the employer's general assets. . . . If an employer opposes a vacation pay claim by alleging ERISA coverage . . . , enforcement as to that claim will be stayed for a reasonable period *to allow the employer to submit evidence in substantiation of that defense.*" (Italics added.)

None of the elements of estoppel has been met, and we decline to apply the doctrine to contravene section 227.3, which was adopted for the protection and benefit of state employees to prohibit the forfeiture of vested vacation benefits. (*Suastez, supra,* 31 Cal.3d at pp. 783-784.)

Finally, appellant contends the DLSE's investigation violates the California Administrative Procedure Act, because informal, secret regulations are prohibited by the act. The argument is based upon its contention that the DLSE has adopted a "new enforcement policy." Not so. The Office of Administrative Law's determination No. 18, issued on December 29, 1989, upheld paragraph 1 of interpretive bulletin No. 86-83 which simply restated existing policy and law. The DLSE is empowered to determine whether a VEBA is funded and whether it makes direct payments to employees' vacation benefits. Accordingly, there is no merit to appellant's contention that the DLSE cannot subpoena the VEBA records until it promulgates a new regulation.

### III. *Does the Subpoena Seek Irrelevant Records and Is It Excessive for the Purposes of Its Inquiry?*

Appellant argues the subpoena cannot be enforced because it seeks irrelevant records and is excessive for the purposes of its inquiry. It contends the DLSE failed to demonstrate the relevance of the documents it seeks, that the subpoena does not seek "required records," and that, even as limited by the trial court, the subpoena is unconstitutionally excessive.

Item number 1 of the subpoena requested all IRS-990 forms—"return of organization exempt from income tax"—filed by appellant's VEBA with the IRS from 1988, to the present. Those returns, required to be filed with the IRS and to be disclosed to anyone upon request under the Internal Revenue Code, would contain information concerning the VEBA's assets, liabilities, expenses and fund balances.

Number 2 sought all IRS-5500 forms—"annual return/report of employee benefit plan"—filed by the VEBA with the IRS from 1988 to the present. Again, all tax exempt employee benefit plans must file such annual reports and they are open to public inspection. (Int.Rev. Code, §§ 6033, 6104(b).) The annual reports would contain information concerning the number of VEBA participants, its assets, liabilities, income, expenses, and fund balances.

Number 3 sought all IRS-1024 forms—"application for recognition of exemption"—filed by the VEBA with the IRS from 1988 to the present.

Those applications would contain information concerning the VEBA's revenues, expenses, assets, liabilities, and fund balances. It would also indicate the nature of the benefits provided to participants, the manner in which these benefits are provided, and the number of employees covered by the plan. Again, these applications are a matter of public record. (Int.Rev. Code, § 6104(a)(1)(A).)

Number 7 requested FTB form 199—"exempt organization annual information statement or return"—and number eight sought FTB form 3500 —"exemption application." These are state tax forms equivalent to the IRS's forms 990 and 1024, and contain similar information concerning the VEBA's funding.

Number 9 requests production of the VEBA's plan description and summary plan description. These documents contain information concerning the plan's requirements respecting eligibility for participation and benefits, circumstances which may result in the denial or loss of benefits, and the source of financing of the plan. (29 U.S.C. § 1022(b).) These records will establish whether, and under what circumstances, covered employees can suffer forfeiture of accrued vacation pay. Once again, the VEBA is required to file these documents with the Secretary of Labor and they are open to public inspection. (29 U.S.C. §§ 1024(a)(1), 1026.)

Number 10 sought the VEBA's annual reports from 1988 to the present. These reports must contain financial statements reflecting the plan's assets, liabilities, receipts and disbursements. (29 U.S.C. § 1023(b).) Again, these documents must be filed with the Secretary of Labor and are open to public inspection. (29 U.S.C. §§ 1024(a)(1), 1026.)

Number 16 requested the VEBA's bank statements from 1988 to the present reflecting all receipts and disbursements. These records would enable the DLSE to determine whether the VEBA was funded and how it operated with respect to the payment of vacation benefits on a day-to-day basis.

Finally, number 17 requested production of all written guidelines issued or in effect from 1988 to the present, including employee handbooks, policy memos or manuals, provided by the employer or the VEBA to employees concerning the establishment, funding or operation of the VEBA or the condition or payments of benefits. From these documents, the DLSE could determine exactly how and from what source vacation benefits were paid.

Unquestionably, the documents sought in the subpoena are relevant and material to the DLSE's investigation. However, appellant contends the

subpoena does not seek "required records," and is therefore excessive. It argues the documents sought are "required to be *filed*, not kept. There is no requirement that these records be kept on hand . . . ." In *Craib* v. *Bulmash*, *supra*, 49 Cal.3d 475, the Supreme Court noted that the subpoenas there "sought only those records which the commissioner could minimally expect would be available in light of pertinent record keeping requirements." (*Id.* at p. 483.) However, nothing in *Craib* can be read to limit the enforcement powers of the administrative agency's subpoena to documents which are not required to be *maintained* under the Labor Code, although they are required to be *filed*. No other case has so held.

The DLSE is subpoening documents to ascertain whether it has jurisdiction to enforce the provisions of section 227.3. The permissible scope of this kind of administrative investigation is well established: "Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant." (*Brovelli* v. *Superior Court*, *supra*, 56 Cal.2d at p. 529.) That standard is met here.

Appellant asserts that *Czechowski*, *supra*, 731 F.Supp. 406 is the only authority for the DLSE to investigate the VEBA's funding and system for distributing benefits. ▮ But case law is clear that an administrative agency is empowered to conduct an investigation and subpoena records to determine whether the entity under investigation is subject to the agency's jurisdiction and whether there has been a violation of provisions which the agency is empowered to regulate. (*Okla. Press Pub. Co.* v. *Walling*, *supra*, 327 U.S. at pp. 215-217 [90 L.Ed. at pp. 633-635]; *Younger* v. *Jensen*, *supra*, 26 Cal.3d at p. 405.)

DISPOSITION

The order compelling compliance with the subpoena is affirmed. The DSLE shall recover its costs on appeal.

Crosby, Acting P. J., and Wallin, J., concurred.

A petition for a rehearing was denied March 24, 1993, and respondent's petition for review by the Supreme Court was denied May 19, 1993.