Filed 3/14/22; certified for publication 4/5/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALORICA INC.,<br><br>    Defendant and Appellant. | E076786<br><br>(Super.Ct.No. CVMV2000170)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Eric Isaac, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Goodwin Procter, David R. Callaway, Laura A. Stoll, and Tierney E. Smith for Defendant and Appellant.

Michael A. Hestrin, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Plaintiff and Respondent.

This case arises from an ongoing investigation by the district attorneys' offices of several counties into the debt collection practices of Alorica Inc. (Alorica). Alorica

1

appeals from a trial court order compelling it to comply with an administrative subpoena. We affirm.

BACKGROUND

According to the Riverside County District Attorney's office, in January 2019, the district attorneys' offices of the counties of Riverside, Los Angeles, San Diego, and Santa Clara began investigating Alorica for compliance with the Rosenthal Fair Debt Collection Practices Act (the Rosenthal Act; Civ. Code, § 1788, et seq.) and the Telephone Consumer Protection Act (47 U.S.C. § 227). (We refer to these district attorneys' offices collectively as the People.) In November 2019, the People served Alorica with an investigative subpoena. The subpoena contained 11 separate document requests and covered the time period from February 2015 through the date the subpoena was served. The People directed Alorica to respond by December 13, 2019, and to specify whether any of the requested records were no longer in Alorica's "possession, custody or control."

The People sought the collection services agreements and other agreements between Alorica and its top five clients as defined on an annual basis by the volume of consumer debt calls made, by the amount of debt sent for collection, and by the number of individuals engaged in making such calls (Request No. 2). The People sought all of the call records of all debt collection calls made for these clients to California residents during the relevant period (Request No. 11). The People also directed Alorica to identify any company that monitored or audited Alorica for compliance with debt collection practice laws (Request No. 3), to produce all policies and procedures Alorica followed

2

related to collecting debt in California (Request No. 4), and to provide organizational charts regarding Alorica's corporate structure along with specific identifying information regarding that structure (Request Nos. 5, 6).

In addition, the People sought records related specifically to Alorica's clients Credit One Bank, N.A. (Credit One) and another bank, including any specific policies followed or dialing systems used for these clients and specified information related to those dialing systems (Request Nos. 7, 8). The People directed Alorica to provide all of the call records of all debt collection calls Alorica made for Credit One and the other bank to California residents during the relevant period (Request Nos. 9, 10).

In December 2019, Alorica served its objections and responses to the subpoena. Alorica objected to most of the requests and argued that the requests violated Alorica's right to privacy and right against unreasonable searches and seizures. Alorica claimed that it did not have any debt collection clients, so it denied having any of the requested agreements with clients related to debt collection, policies and procedures relating to the collection of consumer debt, or call records of debt collection calls as to the defined top five clients.

Concerning the debt collection call records for Credit One and the other specified bank, Alorica stated that it would provide the documents that were in its custody, possession, or control. For Credit One, those records consisted of "dialer files for Credit One for the prior 30 days." According to Alorica's counsel, "under the terms of Alorica's contract with Credit One, Alorica only keeps call records for 30 days. The call

data is transmitted to Credit One and Credit One may retain call records sent by Alorica each day (or periodically as required by Credit One)."

The parties continued to meet and confer. Alorica subsequently produced an organizational chart and some client identification information.

One year later, in November 2020, the People petitioned for an order compelling full compliance with the subpoena. Alorica opposed and argued that it is not a debt collector subject to the Rosenthal Act, so the subpoena was invalid as it was not reasonably relevant to an investigation concerning debt collection. An Alorica company executive attested that "Alorica is a customer experience company" and "is not a 'debt collector' or debt buyer" because "Alorica does not collect funds from debtors and is not paid based on amounts collected from consumers." For four clients, including Credit One, Alorica makes "outbound calls on behalf of and in the name of its clients to consumers who are late paying active accounts." Those calls comprise less than one percent of Alorica's business.

Alorica argued in the alternative that it had substantially complied with the subpoena by producing "all of the responsive information and documents with respect to Credit One" for the last 30 days in December 2019 because Alorica retains only 30 days worth of call records for its clients, including Credit One. Alorica argued that by seeking additional call data the People were treating the subpoena as "an ongoing obligation with no end in sight." In addition, Alorica argued that it should not be required to produce

4

further information relating to Credit One because the People were not authorized to seek such records under the National Bank Act.

At a hearing on the matter, the trial court granted the People's petition. The court ordered Alorica to provide further responses to Request Nos. 2 through 4 and 7 through 11, and to confirm that Alorica produced all organizational charts responsive to Request Nos. 5 and 6. The minute order directs that "[f]urther issues discussed clarifying [the] court order" were provided in the hearing.

At the hearing, the court concluded that Alorica is a debt collector under the Rosenthal Act, that each of the contested requests was reasonably relevant to the People's investigation into Alorica's debt collection practices, and that Alorica's original responses were incomplete. The court rejected Alorica's argument that because the People could not obtain Credit One's call data directly from the bank absent "some sort of legal action," the same data was not subject to disclosure by Alorica in response to the subpoena. The court thus concluded that Alorica's "claim that it should not have to provide more than 30 days of call data is unsupported." After further discussion, the court added that the People were requesting that Alorica "turn over the call data information that's in your possession," "what's in your possession" has "a clear meaning," and the order did not require Alorica to produce documents on an ongoing basis.

DISCUSSION

Alorica argues that it is not a debt collector under the Rosenthal Act and that the trial court therefore erred by ordering it to comply with the administrative subpoena. Alorica also argues that the subpoena improperly seeks Credit One's call records in violation of the National Bank Act. Both arguments lack merit.

A. *Administrative Subpoena Power*

Government Code section 11180 authorizes the Attorney General (and other administrative department heads) to investigate and to prosecute actions concerning matters related to the business activities and subjects under its jurisdiction. The Attorney General's power is granted to a district attorney in certain circumstances. (Bus. & Prof. Code, § 16759.) As part of such an investigation, the district attorney may issue subpoenas for "the production of papers, books, accounts, documents, . . . and testimony pertinent or material to any inquiry, investigation, hearing, proceeding, or action conducted in any part of the state." (Gov. Code, § 11181, subd. (e).)

The power to make an administrative inquiry is akin "to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" (*Brovelli v. Superior Court of Los Angeles County* (1961) 56 Cal.2d 524, 529 (*Brovelli*).) Such subpoenas do not violate the constitutional prohibition against unreasonable searches and seizures if (1) the inquiry is "one which the agency demanding production is authorized to make," (2) the demand is "not too

6

indefinite," and (3) the information sought is "reasonably relevant" to the intended investigation. (*Ibid.*; *Fielder v. Berkeley Properties Co.* (1972) 23 Cal.App.3d 30, 40.) We broadly construe the relevance standard. (*State Water Resources Control Bd. v. Baldwin & Sons, Inc.* (2020) 45 Cal.App.5th 40, 57.) We independently review whether the subpoena meets these enforcement standards. (*Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485 (*Millan*).)

B. *The Rosenthal Act*

The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." (Civ. Code, § 1788.1, subd. (b).) The statute defines "'debt collector'" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." (Civ. Code, § 1788.2, subd. (c).) "The term 'debt collection' means any act or practice in connection with the collection of consumer debts." (Civ. Code, § 1788.2, subd. (b).) The Rosenthal Act is a remedial statute that we interpret broadly to effectuate its purpose. (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340; *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 ["civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"].)

Alorica does not dispute that the People have the authority to investigate whether debt collectors comply with the Rosenthal Act. Alorica instead claims that it is not a debt

7

collector under the statute, so the subpoena seeks information that is not reasonably relevant to the People's authority to investigate compliance with the Rosenthal Act. In support of that argument, Alorica claims that it does not regularly engage in debt collection services because only one percent of its business consists of making outbound account-related calls, and those calls are made on behalf of only four clients.[1]

Alorica's argument lacks merit. An agency has the power to investigate a matter within its jurisdiction "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" (*Brovelli*, *supra*, 56 Cal.2d at p. 529.) Encompassed within that investigative power is "the authority to conduct an investigation and to subpoena records to determine whether the entity under investigation is subject to the agency's jurisdiction and whether there have been violations of provisions over which the agency has jurisdiction." (*Millan*, *supra*, 14 Cal.App.4th at p. 487.) Accordingly, the People have the authority to subpoena records from Alorica in order to determine whether Alorica—which concedes that it makes "outbound calls on behalf of and in the name of its clients to consumers who are late paying active accounts"—is a debt collector under the Rosenthal Act. It follows that Alorica cannot resist the subpoena by claiming that it is not a debt collector.[2]

[1]     Alorica does not concede that the "outbound account-related services it performs" constitute debt collection, because Alorica does not "actually receive any payments from consumers made to its clients' accounts." Rather, Alorica argues that even if those services constitute debt collection, Alorica still is not a debt collector.

[2]     Alorica cites an unpublished federal district court summary judgment ruling for the proposition that Alorica is not a debt collector under the Rosenthal Act because debt

C. *The National Bank Act*

Alorica argues that Request Nos. 9 and 11 of the subpoena are invalid and unenforceable because the requests amount to an impermissible "visitation" upon Credit One under the National Bank Act. We are not persuaded.

The National Bank Act provides: "No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress or by either House thereof or by any committee of Congress or of either House duly authorized." (12 U.S.C. § 484, subd. (a).) Under that provision, only the federal Office of the Comptroller of the Currency (the OCC) "or an authorized representative of the OCC may exercise visitorial powers with respect to national banks." (12 C.F.R. § 7.4000(a)(1); *Cuomo v. Clearing House Ass'n, L.L.C.* (2009) 557 U.S. 519, 524.) Visitorial powers include examining a national bank, inspecting a national bank's records, regulating activities permitted under federal banking law, and "[e]nforcing compliance with any applicable

---

collection calls make up only one percent of its business. (See *Pflueger v. Auto Finance Group, Inc.* (C.D.Cal. Apr. 26, 1999, No. CV-97-9499 CAS (CTX)) 1999 WL 33740813.) We are not persuaded. First, a federal court's interpretation of California state law is not binding. (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 764.) Second, the district court's summary judgment ruling was necessarily limited to the evidence that was before the court. Assuming for the sake of argument that the ruling was legally sound, the People would still have the authority to collect evidence in order to determine whether Alorica is relevantly similar to the defendant in the federal case—the People are not required to take Alorica's word for it. Third, it is difficult to understand how Alorica's argument could be sound. If Alorica makes debt collection calls every day, for example, then it is at least arguable that Alorica regularly engages in debt collection, even if Alorica is such a large business that the debt collection calls comprise only one percent of its business according to some metric.

Federal or state laws concerning those activities, including through investigations that seek to ascertain compliance through production of non-public information by the bank . . . ." (12 C.F.R. § 7.4000(a)(2).) State officials "may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or prosecuting enforcement actions, except in limited circumstances authorized by federal law." (12 C.F.R. § 7.4000(a)(1).)

The People do not claim to have been authorized by federal law to exercise visitorial powers as to a national bank. Moreover, the parties do not dispute that Alorica is not a national bank and thus is not itself subject to the provisions of the National Bank Act. Alorica instead argues that the subpoena is an impermissible visitation *upon Credit One* because (1) the National Bank Act prohibits state officials from examining the "records of national banks" (12 C.F.R. § 7.4000(a)(1)), and (2) "[a]ny records Alorica possesses regarding Credit One" constitute records "of" a national bank within the meaning of the regulations. The only authority that Alorica cites for its expansive interpretation of the regulations is a dictionary definition of the word "of," which of course has many meanings.

Alorica's interpretation is implausible on its face. For example, if a licensed general contractor performs construction work for a national bank, then the contractor will have records regarding that work. A state agency investigating the contractor for compliance with state licensing requirements should be able to access such records in the

10

contractor's possession. But if Alorica were right that any record regarding a national bank is beyond the reach of state officials, then the state agency would be barred from examining those records or requiring the contractor to produce them. Such an interpretation would make no sense as a matter of policy. The point of the prohibition on "visitation" by state agents is to protect the exclusive regulatory authority of the OCC concerning national banks. But the OCC has no ability to enforce state licensing requirements for general contractors, or otherwise to investigate or prosecute wrongdoing by other third parties providing services to national banks. Thus, if Alorica's interpretation were correct, the National Bank Act and associated regulations would arbitrarily curtail state law enforcement authority without creating an equivalent federal law enforcement authority to fill the gap. It is not reasonable to infer that such a result was intended.

Fortunately, there are alternatives to Alorica's interpretation. One ordinary meaning of the word "of" is "to indicate belonging or a possessive relationship." (Merriam-Webster Dict. Online (2022) <https://www.merriam-webster.com/dictionary/of> [as of Mar. 10, 2022].) We are not aware of any basis to interpret "of" in the federal regulations in any other way—the regulations prohibit state officials from examining or requiring production of records possessed by national banks. But the regulations do not prohibit state officials from examining or requiring production of other individuals' or entities' records of their dealings with national banks. The trial

11

court's order is therefore consistent with the regulations, because it requires Alorica to produce only records in Alorica's possession.

Because Alorica is not a national bank, the National Bank Act does not apply to Alorica. We accordingly conclude that the National Bank Act does not preclude the People from subpoenaing the debt collection call records in Alorica's custody, control, or possession that Alorica made for Credit One.[3] The People's requests for those documents (Request Nos. 9 & 11) are consequently valid and enforceable.

## DISPOSITION

The January 14, 2021, order compelling Alorica's compliance with the investigative subpoena is affirmed.

MENETREZ
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

---

[3] Alorica argues that because it does not maintain more than 30 days' worth of call records for Credit One at any given time, the trial court order requires it to request and to obtain its historical call records directly from Credit One. The argument is not supported by the record. The trial court stated that Alorica was required to produce only those records in its possession.

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076786 |
| v. | (Super.Ct.No. CVMV200170) |
| ALORICA INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

We have received two requests pursuant to California Rules of Court, rule 8.1120(a), to publish the nonpublished opinion in this matter that was filed on March 14, 2022. Having reviewed those requests, we conclude that the opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105(c).

We therefore grant the requests and order that this opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). We consequently certify for publication the opinion filed in this matter on March 14, 2022.

CERTIFIED FOR PUBLICATION

MENETREZ
                                                                                            J.

We concur:

RAMIREZ
                    P. J.
FIELDS
                    J.