[No. C057156. Third Dist. July 31, 2008.]

THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF PESTICIDE
REGULATION, Plaintiff and Respondent, v.
PET FOOD EXPRESS LIMITED, Defendant and Appellant.

COUNSEL

Henn, Etzel & Moore and John Douglas Moore for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Mary E. Hackenbracht, Assistant Attorney General, and Charles W. Getz, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**SIMS, J.**—Pet Food Express Limited (PFE) appeals from a trial court's order compelling it to comply with an investigatory administrative subpoena issued by the State of California's Department of Pesticide Regulation (the Department), seeking records pursuant to Government Code section 11180 et seq. (Undesignated statutory references are to the Government Code.) We shall deny the Department's motion to dismiss the appeal, grounded on

asserted nonappealability of the order. We shall reject PFE's contention that the order impermissibly burdens PFE with a duplicative demand on a claim barred by the statute of limitations. Accordingly, we shall affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

PFE is a chain of pet food/supply stores. PFE bought some flea prevention products made by European drug companies and imported through a British distributor, Abbeyvet, until the Department advised PFE in August 2003 that the foreign-made products were not properly registered under California law (the Food & Agr. Code).

In 2004, in response to a written request by the Department, PFE provided copies of its invoices of *purchases* of foreign products from Abbeyvet.

In February 2005, the Department issued a notice of proposed action (NOPA) under Food and Agricultural Code section 12999.4,[1] proposing to levy penalties against PFE in the amount of $700,000, as follows: "As early as September 20, 2000, [PFE] began purchasing foreign Advantage and Frontline flea control pesticides from [Abbeyvet and continued to purchase them until August 4, 2003]. The Department has information and belief that [PFE] sold a minimum of one (1) foreign Advantage and/or Frontline flea control pesticide product a week for the time period beginning at least as early as October 1, 2001, and ending at least as late as August 13, 2003. The sales . . . were in violation of FAC [Food and Agricultural Code] sections

---

[1] Food and Agricultural Code section 12999.4 provides in part: "In lieu of civil prosecution by the director [Director of Pesticide Regulation, Food and Agricultural Code section 12500.5] may levy a civil penalty against a person violating Sections . . . 12992, 12993 . . . of not more than five thousand dollars ($5,000) for each violation. [¶] (b) Before a civil penalty is levied, the person charged with the violation shall be given a written notice of the proposed action [NOPA] . . . and shall have the right to request a hearing within 20 days after receiving notice of the proposed action. . . . If a hearing is not timely requested, the director may take the action proposed without a hearing. [¶] (c) If the person against whom the director levied a civil penalty requested and appeared at a hearing, the person may seek review of the director's decision within 30 days of the date of the decision pursuant to Section 1094.5 of the Code of Civil Procedure. [¶] (d) After the exhaustion of the review procedure provided in this section, the director, or his or her representative, may file a certified copy of a final decision of the director that directs the payment of a civil penalty and, if applicable, any order that denies a petition for a writ of administrative mandamus, with the clerk of the superior court of any county. Judgment shall be entered immediately by the clerk in conformity with the decision or order. No fees shall be charged by the clerk of the superior court . . . . [¶] (e) Any money recovered under this section shall be paid into the Department of Pesticide Regulation Fund for use by the department, upon appropriation, in administering this division and Division 6 (commencing with Section 11401) [Pest Control Operations]."

12992[2] and 12993,[3] as the flea control pesticide product's labels did not conform to the [Department]-registered labels and were not registered by the Department. Each violation constitutes a separate offense ([Food and Agricultural Code] section 12996).[4] The proposed fine [is] based upon a proposed fine of $5,000 per sale per week for 140 weeks, the number of weeks from October 1, 2001, through August 13, 2003."

The NOPA advised PFE of its right to request an administrative hearing (Food & Agr. Code, § 12999.4; see fn. 1, *ante*). PFE says it objected to the NOPA but the Department has not set a hearing. PFE fails to substantiate this assertion with a cite to the record but, in any event, for our purposes it does not matter whether PFE requested an administrative hearing.

In June 2006, the Department issued an administrative subpoena duces tecum (§ 11184),[5] requesting information about PFE's *sales* (as opposed to PFE's purchases). PFE did not respond to the subpoena.

On January 30, 2007, the Department issued another, identical administrative subpoena duces tecum to PFE, captioned, "In the Matter of the Investigation of Sales of Unregistered Pesticide Products, and Sales of Misbranded Pesticide Products," stating in part:

[2] Food and Agricultural Code section 12992 provides: "It is unlawful for any person to sell any adulterated or misbranded pesticide. [¶] In any prosecution of any agent or dealer under this section it is a complete defense to prove that the adulterated or misbranded pesticide that is the basis of the prosecution was guaranteed by the party from whom the agent or dealer purchased it to be not adulterated or misbranded."

[3] Food and Agricultural Code section 12993 provides: "It is unlawful for any person to manufacture, deliver, or sell any pesticide or any substance or mixture of substances that is represented to be a pesticide, or to retail any formula for a pesticide in conjunction with the sale or gift of materials that are represented to be the essential ingredients necessary to constitute a pesticide, which is not registered pursuant to this chapter, or for which the registration has been suspended or canceled, except as provided in regulations adopted by the director or as provided in the notice or order of suspension or cancellation. This section, however, does not apply to any pesticide product of a registrant that is manufactured solely for export outside this state, and which is so exported."

[4] Food and Agricultural Code section 12996, subdivision (a) provides: "Every person who violates any provision of this division relating to pesticides, or any regulation issued pursuant to a provision of this division relating to pesticides, is guilty of a misdemeanor and upon conviction shall be punished by [a fine or imprisonment or both]. . . . Each violation constitutes a separate offense."

[5] Section 11180 authorizes department heads to investigate matters within the department's jurisdiction. Section 11181 authorizes the department head to issue subpoenas for the production of documents. Section 11184 provides in part that "in any investigation conducted under this article, the head of the department shall issue process and subpoenas in a manner consistent with the California Constitution and the United States Constitution . . ." and pursuant to the procedures of Code of Civil Procedure section 413.10 et seq.

"The [Department], having reasonable belief that Food and Agricultural Code sections 12992 and 12993 have been violated with respect to sales of Bayer Advantage flea control products and Merial Frontline and Frontline Plus flea control products into and within California, and pursuant to the power conferred by sections 11180 and 11181 and Food and Agricultural Code section 11453, has authority to conduct the above entitled investigation.

"[PFE] has produced documentation to the Department showing purchases in excess of $1.2 million of unlawful foreign Bayer Advantage flea control pesticide products and Merial Frontline and Frontline Plus flea control pesticide products.

"You are hereby commanded to produce [copies of the following records] . . . .

". . . All records or documents from January 1, 2002, until the present day that refer[] or relate[] to sales of [specified] foreign Bayer Advantage . . . and Merial Frontline and Frontline Plus . . . flea control products . . . .

"Specifically, with respect to foreign Bayer Advantage and Merial Frontline and Frontline Plus flea control products listed in Attachment A, provide such documents that show the following date for each sale:

"1. For all sales, such documents as show:

"a) Dollar amount and unit volume of sales from January 1, 2002, to February 15, 2005.

"b) Date of sale.

"c) Exact identification of product sold.

"d) Quantity sold.

"e) Unit price at which each item sold.

"2. In the absence of transaction records, provide such documents that show volume of product sold and the price at which each product was sold.

"3. This request shall include all documents to the extent that they show any or all of the above-listed information."

PFE did not respond to the subpoena.

The Attorney General's office sent letters in February and March 2007, seeking compliance with the subpoena. PFE responded with a letter on May 2, 2007, questioning the Department's need for the information sought in the subpoena.

On May 11, 2007, the Department, pursuant to statutory authorization, initiated a petition in the superior court for an order directing PFE to comply with the administrative subpoena. (§§ 11187,[6] 11188.[7]) The Department filed an ex parte application for an order to show cause (OSC) regarding compliance with the investigatory subpoena, and a petition for an OSC.

PFE did not contest the ex parte application. The trial court issued an OSC and set a hearing date. The hearing was rescheduled after PFE claimed it was not served with the OSC.

PFE filed a response to the OSC, challenging the subpoena on the ground of administrative burden and questioning whether there was a need for PFE's "sales" data, since PFE had already provided its *purchase* data upon a representation the Department was not "likely" to seek an administrative fine against PFE. A declaration of a PFE vice-president attested, "I do not know if we have the retail sales data that [the Department] now seeks (we have no

---

[6] Section 11187 states in part that "if any witness refuses to . . . produce or permit the inspection or copying of any papers . . . required by subpoena, the head of the department may petition the superior court in the county in which the hearing or investigation is pending or the county in which . . . items are designated in the subpoena to be produced, for an order compelling the person to . . . produce and permit the inspection and copying of the papers or other items required by the subpoena . . . . [¶] . . . [¶] (d) If any witness objects [to the subpoena] . . . , the witness shall state the objection and the validity of the objection shall be determined exclusively in a proceeding brought by the head of the department to compel compliance as provided in this section."

[7] Section 11188 provides: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court at a specified time and place and then and there show cause why he or she has not . . . produced or permitted the inspection or copying of the papers or other items. . . . If it appears to the court that the subpoena was regularly issued . . . the court shall enter an order that the person . . . permit the inspection and copying of the required papers or other items . . . . Upon failure to obey the order, the person shall be dealt with as for contempt of court."

records at all on the subject products after August, 2003 since there were no sales[8]) and even if [*sic*] we do it will take a lot of person-hours to mine and copy it." PFE argued the subpoena was an arbitrary exercise of police power in violation of the due process clause and in violation of the Fourth Amendment. In the course of making these arguments in the trial court, PFE stated the records sought by the Department dating back to 2002 would be difficult to "mine," but PFE did not raise the statute of limitations issue it now seeks to raise on appeal.

The trial court in August 2007 issued an order compelling PFE to comply with the administrative subpoena by September 26, 2007, and retaining jurisdiction to insure compliance.

PFE filed a notice of appeal.

## DISCUSSION

### I. *Appealability*

We first dispose of the Department's motion to dismiss the appeal due to nonappealability of the order.

■ " ' "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute." ' (*People v. Mazurette* (2001) 24 Cal.4th 789, 792 [102 Cal.Rptr.2d 555, 14 P.3d 227].)" (*People v. Totari* (2002) 28 Cal.4th 876, 881 [123 Cal.Rptr.2d 76, 50 P.3d 781].)

We shall conclude the order is made appealable by Code of Civil Procedure section 904.1, subdivision (a)(1).[9]

Confusion exists regarding appealability of orders enforcing administrative subpoenas, as stated in *Pacific-Union Club v. Superior Court* (1991) 232 Cal.App.3d 60 at pages 68–69, footnote 3 [283 Cal.Rptr. 287]: "Some cases

---

[8] We have no need to decide whether, as PFE assumes, this comment would suffice as evidence that there were no sales after August 2003.

[9] Code of Civil Procedure section 904.1, subdivision (a)(1), provides:

"(a) An appeal, other than in a limited civil case, is to the [C]ourt of [A]ppeal. An appeal, other than in a limited civil case, may be taken from any of the following:

"(1) From a judgment, except (A) an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or (B) a judgment of contempt that is made final and conclusive by Section 1222."

assume appealability without discussion. [Citations.] Other cases conclude that a Government Code section 11188 order is directly appealable as a final judgment in a special proceeding. [Citations.] Still others have concluded that such orders are reviewable only by writ. [Citations.] . . . [¶] In *Craib* v. *Bulmash* (1989) 49 Cal.3d 475 [261 Cal.Rptr. 686, 777 P.2d 1120], the Supreme Court declined to resolve the confusion. The Court of Appeal had discussed the appealability problem with citations to both sides of the debate. The Supreme Court opinion does not discuss the question of appealability." *Pacific-Union Club* concluded that, even if the order were not directly appealable, the court would treat it as a writ in the interests of judicial economy and expediency. (*Id.* at pp. 68–69, fn. 3.)

The California Supreme Court has still not resolved the issue. Thus, in reviewing a Court of Appeal decision concerning an administrative subpoena, the California Supreme Court said in *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4 [56 Cal.Rptr.2d 706, 923 P.2d 1], that the Court of Appeal "held that the 'better view' is that an order compelling compliance with an administrative subpoena is appealable as a final order in a special proceeding, following *Millan* v. *Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 484–485 [18 Cal.Rptr.2d 198], and cases cited. The parties do not question that holding here, and it is therefore not before us for review." (*Arnett v. Dal Cielo, supra,* 14 Cal.4th at p. 18.)

■ The California Supreme Court's deflection of the issue is perplexing, because appealability is a jurisdictional question that must be addressed by the reviewing court, even if the parties do not question it. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 14–15, pp. 73–76.) Moreover, the *Millan* case (*Millan v. Restaurant Enterprises Group, Inc., supra,* 14 Cal.App.4th 477) cited by the Supreme Court in turn cited the Supreme Court's failure to decide the issue as an additional basis for the *Millan* decision. "Numerous cases, including cases from our Supreme Court, have decided appeals taken from similar orders on the merits without discussion of the appealability issue. [Citations.] Inasmuch as the Supreme Court is among those courts which have assumed the appealability of such orders, we conclude such an order is appealable . . . ." (*Millan, supra,* 14 Cal.App.4th at p. 485.)

In *City of Santa Cruz v. Patel* (2007) 155 Cal.App.4th 234 [65 Cal.Rptr.3d 824] (*Patel*), the Court of Appeal for the Sixth Appellate District held that analogous orders compelling compliance with legislative subpoenas (§ 37104)

must be deemed final judgments, appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (*Patel, supra,* 155 Cal.App.4th at pp. 240–243.) We apply the same reasoning to the administrative subpoenas at issue in this case.

■ Thus, a judgment is the "final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.) ■ The statutory scheme (§ 11180 et seq.) provides for an original proceeding in the superior court, which results in an order directing the respondent to comply with the administrative subpoena. (§§ 11187, 11188; see fns. 6 & 7, *ante.*) The court order enforcing the administrative subpoena is tantamount to a superior court judgment in mandamus which, with limited exceptions, is appealable under Code of Civil Procedure section 904.1. (*Patel, supra,* 155 Cal.App.4th at pp. 240–243.) Whether the matter is properly characterized as an "action" (Code Civ. Proc., § 22) or a "special proceeding" (Code Civ. Proc., § 23), it is a final determination of the parties' rights. It is final because it leaves nothing for further judicial determination between the parties except the fact of compliance or noncompliance with its terms. (*Patel, supra,* 155 Cal.App.4th at pp. 240–243.) The fact that an intransigent respondent may be subject to a contempt order does not mean the court order is not final, because the same possibility exists with injunctions and final judgments that form the basis for contempt citations. The purpose of any judicial order that commands or prohibits specific conduct is to make the sanction of contempt available for disobedience. This fact does not render such an order "nonfinal." Indeed, the contempt judgment is not appealable but must be reviewed, if at all, by writ, and therefore review of the underlying order can reliably be had only if that order is appealable. (*Ibid.*)

Like the legislative subpoena in *Patel, supra,* 155 Cal.App.4th at page 243, the trial court order in this case concerning an administrative subpoena determined all of the parties' rights and liabilities at issue in the proceeding; the only determination left was the question of future compliance, which is present in every judgment.

The Department argues the reasoning of *Patel* is faulty for several reasons.

First, says the Department, the Sixth Appellate District's comparison of a compliance order to a judgment in mandamus is flawed, because a judgment in mandamus is expressly made appealable by Code of Civil Procedure section 904.1. The Department's point is not persuasive, given the totality of the *Patel* court's reasoning.

Second, says the Department, the Sixth Appellate District did not adequately explain its point that the potential for a contempt order (for noncompliance with the compliance order) did not render the compliance order nonfinal. The Department urges us instead to follow the Second Appellate District which held, most recently in *Bishop v. Merging Capital, Inc.* (1996) 49 Cal.App.4th 1803 [57 Cal.Rptr.2d 556], that because an order compelling compliance with an administrative subpoena (§ 11188) is not expressly made appealable by Code of Civil Procedure section 904.1 and has no adverse impact in and of itself, it is not final and not appealable. We find the reasoning of *Patel, supra,* 155 Cal.App.4th 234, more persuasive.

We also reject the Department's further argument that we should analogize to discovery orders in civil litigation, which are not considered final, appealable orders. Such discovery orders, however, are made in connection with pending lawsuits which have yet to be resolved. A discovery order does not determine all of the parties' rights and liabilities at issue in the litigation. The Department argues the same applies here, because even with the documents, the Department cannot impose administrative penalties unless an administrative hearing is held if such a hearing is requested. However, it is possible an administrative hearing may not be requested and, even if it is requested, it will not necessarily end up in court.[10] In contrast to this case, pending civil litigation in which a discovery order occurs already involves the court and will continue to do so.

■ Finally, the Department disagrees with the statement in *Patel, supra,* 155 Cal.App.4th 234, that appealability of the compliance order assures reliable review, since a contempt judgment is nonappealable and is reviewable, if at all, by writ petition to the appellate court. The Department argues appellate writ review of a compliance order is good enough (though the Department suggests PFE's appeal should not be treated as a writ petition). However, unlike an appeal, a writ petition may be summarily denied without a written opinion. (Cal. Const., art. VI, § 14 [appellate court decisions that determine causes shall be in writing with reasons stated]; *People v. Kelly* (2006) 40 Cal.4th 106, 116, fn. 1 [51 Cal.Rptr.3d 98, 146 P.3d 547] [summary denial of writ petition does not determine a cause for purposes of written opinion requirement].)[11] A written opinion may be valuable to a party

---

[10] Though not mentioned by the parties, we note Food and Agricultural Code section 12999 authorizes the Attorney General to file a court action for civil penalties. No such court action has been filed in this case.

[11] We disregard the Department's vague and unsubstantiated assertion in its statement of facts that PFE has filed an action against the Department in Alameda County, challenging procedures to be used in a future administrative action involving proposed administrative penalties which have been assessed but not finalized. Assuming such an action was filed, the Department fails to explain or demonstrate how it connects with this case.

challenging an administrative subpoena. As is the case here, a written opinion may help the parties resolve issues such as application of the statute of limitations.

We conclude the order enforcing the administrative subpoena (§ 11188) must be deemed a final judgment, appealable under Code of Civil Procedure section 904.1, subdivision (a)(1). (See fn. 9, *ante*.)

The Department's motion to dismiss the appeal is denied.

## II. *PFE Fails to Show Grounds for Reversal*

■ PFE contends the trial court erred in issuing the order compelling compliance with the administrative subpoena because, according to PFE, the subpoena imposed an oppressive burden on PFE by seeking duplicative documents which in any event related to a claim barred by the statute of limitations. We shall conclude PFE fails to show grounds for reversal.

As indicated, sections 11180 and 11181 authorized the Department to issue the administrative subpoena in furtherance of its investigation, and sections 11187 and 11188 (see fns. 6 & 7, *ante*) authorized the Department to petition the superior court for an order compelling PFE to comply with the administrative subpoena.

■ "There is no constitutional objection to a system under which the heads of departments of government may compel the production of evidence for purposes of investigation, without instituting formal proceedings against the one from whom the evidence is sought or filing any charges against him. As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' [Citation.] ■ Of course, department heads cannot compel the production of evidence in disregard of the privilege against self-incrimination or the constitutional provisions prohibiting unreasonable searches and seizures. It should be pointed out, however, in this connection that where, as here, the records of a corporation are the object of a subpena, the situation differs from one where the private papers of an individual are sought. Neither the corporation nor a person having custody of its records can refuse to produce them on the basis of the privilege against self-incrimination. [Citations.] Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to

make, that the demand be not too indefinite, and that the information sought be reasonably relevant. [Citations.]" (*Brovelli v. Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462].)

We review de novo the question whether the subpoena meets the standards for enforcement. (*Millan v. Restaurant Enterprises Group, Inc., supra*, 14 Cal.App.4th at p. 485.)

PFE contends the sales records sought in the administrative subpoena were not reasonably relevant to any legitimate regulatory purpose, because (1) the statute of limitations has expired, and (2) PFE already produced its *purchase* records and therefore the Department did not need PFE's *sales* records, rendering the subpoena an arbitrary and capricious abuse of power in violation of Fourteenth Amendment due process and the Fourth Amendment.

First, we reject PFE's constitutional claims because PFE's prior production of its *purchase* records did not render its *sales* records irrelevant. Purchase, possession, *and sale* of mislabeled or unregistered pesticides are all prohibited acts under Food and Agricultural Code sections 12991 (purchase), 12992, 12993 (sale), and 12995 (possession). The NOPA cited Food and Agricultural Code sections 12992 and 12993 (see fns. 2 & 3, *ante*), both of which address the sale of pesticides. The circumstance that PFE purchased mislabeled/unregistered pesticides does not necessarily mean it sold those pesticides. It may have thrown them out (though nothing before us suggests they were thrown out).[12] Thus, the requested sales records were not irrelevant and the subpoena did not constitute an unconstitutional search/seizure or a due process violation.

Second, as to the statute of limitations, PFE cites no statute or other authority on the issue of a statute of limitations in the argument section of its appellate brief. The argument section of the brief merely asserts, without legal analysis, that the NOPA prosecution is time-barred. PFE's appellate brief, under the heading "STATEMENT OF THE CASE" cites Food and Agricultural Code section 13000[13] as imposing a limitations period for the Department to bring a penalty "action," within four years of the occurrence of the violation. This statute was not cited by PFE in the trial court. Although the Department issued the NOPA in February 2005, within four years of the

---

[12] PFE says it could not have sold more than it bought. However, PFE does not indicate it would stipulate to having sold each foreign product it bought.

[13] Food and Agricultural Code section 13000, subdivision (c) (formerly subd. (b)), provides in part, "an action brought by the director to collect civil penalties pursuant to Section 12999.4 for violations of Article 4.5 (commencing with Section 12841), Section 12992, Section 12993, or Section 12995 shall be commenced within four years of the occurrence of the violation."

earliest asserted violation (Oct. 2001), PFE says the NOPA was, as stated in its title, a "proposed action," not an action. PFE claims, without evidentiary support, that it has sued for declaratory relief in Alameda County Superior Court action No. G07346637 to obtain a judicial declaration that the statute of limitations has run.

We disregard the reference to an Alameda County case that is not before us and has not been made the subject of a request for judicial notice.

We reject PFE's limitations argument.

■ Thus, even assuming for the sake of argument that PFE did not forfeit the limitations issue by failing to raise it in the trial court, appellate arguments are supposed to be properly briefed under separate headings and supported by legal and factual analysis. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; Cal. Rules of Court, rule 8.204.)

■ PFE fails to develop any legal or factual analysis supporting its limitations argument. We disagree with PFE's unembellished assertion that the NOPA, as a "proposed action" is not an "action" for purposes of commencing the four-year limitations period of Food and Agricultural Code section 13000. This statute of limitations expressly refers to Food and Agricultural Code section 12999.4 (see fn. 1, *ante*), which says, "In lieu of civil prosecution" the Department may levy civil penalties, and before the penalty is levied, the Department must give written notice of the proposed action (the NOPA). Although the NOPA is labeled a "proposed action," it commences the process and thus satisfies Food and Agricultural Code section 13000. Indeed, there is no other activity that could constitute "commencement" for limitations purposes. Thus, section 12999.4 (see fn. 1, *ante*) also provides that, if no administrative hearing is requested by the party being subjected to the civil penalties, the Department "may take the action proposed without a hearing" and "may file a certified copy of [its] final decision . . . with the clerk of the superior court of any county," and "[j]udgment shall be entered immediately by the clerk in conformity with the decision . . . ." Accordingly, we conclude the 2005 NOPA commenced "an action brought by the director to collect civil penalties," within the meaning of Food and Agricultural Code section 13000. Whether or not some of PFE's *purchase* violations may be barred by the statute of limitations (a point we need not resolve), nothing in this record shows that PFE did not commit *sales* violations within the four-year period preceding service of the NOPA in February 2005. And it is PFE's *sales* records that are sought by the administrative subpoena.

PFE fails to show grounds for reversal based on the statute of limitations.

## DISPOSITION

The August 8, 2007, order compelling Pet Food Express Limited to comply with the administrative subpoena is affirmed. The State of California's Department of Pesticide Regulation shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Scotland, P. J., and Hull, J., concurred.