[No. D052320. Fourth Dist., Div. One. Jan. 12, 2009.]

THE PEOPLE ex rel. PRESTON DuFAUCHARD, as Corporations Commissioner, etc., Plaintiff and Respondent, v. U.S. FINANCIAL MANAGEMENT, INC., et al., Defendants and Appellants.

1504

**COUNSEL**

Loeb & Loeb, Michael L. Mallow and Eugenie L. Warner for Defendants and Appellants.

Alex Calero and Joyce Tsai for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

The California Corporations Commissioner (the Commissioner), as the head of the Department of Corporations (the Department), issued an investigatory administrative subpoena duces tecum to U.S. Financial Management, Inc., and U.S. Financial Management (collectively U.S. Financial Management) pursuant to Government Code sections 11180 through 11182 and Financial Code[1] section 12305. Through his subpoena, the Commissioner sought various records from U.S. Financial Management relevant to his investigation regarding the company's suspected violation of section 12000 et seq. (Check Sellers, Bill Payers and Proraters Law (the Prorater Law)). U.S. Financial Management refused to fully comply with the subpoena. Among other objections, U.S. Financial Management objected to the request for records pertaining to its activities involving non-California residents, on the ground that the Commissioner lacked jurisdiction to investigate such activities.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Financial Code.

The Commissioner filed a petition in the trial court seeking an order compelling U.S. Financial Management to comply with the subpoena. The Commissioner alleged that U.S. Financial Management is a California corporation and a California-based company engaged in prorating with clients from both California and other states. In response, U.S. Financial Management claimed that the Commissioner lacked jurisdiction to investigate its activities with non-California residents. The trial court ordered U.S. Financial Management to fully comply with the Commissioner's subpoena, including providing documents pertaining to non-California residents.

On appeal, U.S. Financial Management claims that the trial court erred in ordering it to comply with the Commissioner's subpoena. U.S. Financial Management's sole argument is that the Commissioner lacks jurisdiction to investigate its activities involving non-California residents. We conclude that the Commissioner has the authority to investigate conduct on the part of U.S. Financial Management, a California corporation whose principal place of business is in California, even where that conduct involves only nonresidents.[2] Therefore, we affirm the judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 2007, the Commissioner filed a petition seeking an order compelling U.S. Financial Management's compliance with a June 28, 2007 subpoena duces tecum. In his petition, the Commissioner alleged that the Department is responsible for administering and enforcing the Prorater Law.[3]

The Commissioner noted that "[a]n individual or entity must first obtain a license from the Commissioner before acting as a prorater, or be exempt." The Commissioner alleged that U.S. Financial Management was acting as a prorater with both California and out-of-state clients, without a license.

The Commissioner stated that in July 2007, the Department properly served a subpoena duces tecum on U.S. Financial Management, requesting the production of certain documents in the course of an investigation into possible violations of the Prorater Law. The Commissioner stated that the

---

[2] U.S. Financial Management does not claim on appeal that the conduct to be investigated occurred outside of California.

[3] "A prorater is a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor." (§ 12002.1.) The Prorater Law regulates those engaged in the business of prorating, and requires such persons to obtain a license from the Commissioner. (See pt. III.C.1.a.ii., *post*.)

Department received a letter from U.S. Financial Management's attorney in August 2007 admitting that U.S. Financial Management had engaged in unlicensed prorating.

In September 2007, U.S. Financial Management sent the Commissioner a document entitled "Responses and Objections to Subpoena Duces Tecum," in which it outlined various grounds on which it based its refusal to produce certain documents. The Commissioner further noted that U.S. Financial Management had "failed and refused to produce any documents relevant to . . . past and current out-of-state prorating clients," in responding to the subpoena.

The Commissioner supported his petition with, among other items, a brief setting forth legal points and authorities, a copy of the subpoena, various correspondence between the Commissioner and U.S. Financial Management regarding U.S. Financial Management's obligations pursuant to the subpoena, U.S. Financial Management's responses and objections to the subpoena, and a declaration attesting to the Commissioner's efforts to gain U.S. Financial Management's compliance with the subpoena.

In its opposition to the Commissioner's petition, U.S. Financial Management stated, "Although [U.S. Financial Management] ha[s] debt settlement clients who are California residents, and [U.S. Financial Management's] office is in San Diego, [U.S. Financial Management] conduct[s] most of [its] business outside of California with [its] non-California resident debt settlement clients." U.S. Financial Management argued that the Commissioner did not have the authority to regulate "occurrences outside the state," but did not specify which of the Commissioner's requests sought information related to such occurrences. U.S. Financial Management also argued that the Commissioner lacked jurisdiction to investigate any of its activities with respect to non-California residents.

U.S. Financial Management supported its opposition with, among other items, a declaration from its president, John Tran. In his declaration, Tran stated that U.S. Financial Management operates a debt settlement business. Tran explained, "In simple form, a debt settlement company negotiates with creditors for creditors to accept a lump sum payoff of a consumer's debt, the lump sum being at a lower amount than what is owed to the creditor." Tran explained that a creditor may be willing to accept such a payoff because the consumer is often in a position to file for bankruptcy protection. Tran stated, "Although [U.S. Financial Management] ha[s] debt settlement clients who are California residents, and [U.S. Financial Management's] office is in San Diego, most of [U.S. Financial Management's] customers reside outside of

California and, therefore, most of [U.S. Financial Management's] business occurs outside of California."

In his reply to U.S. Financial Management's opposition, the Commissioner noted that U.S. Financial Management's Web site indicates that its headquarters is located in San Diego, California. The Commissioner claimed, "As a California-based prorater, all of [U.S. Financial Management's] activities originate from California." The Commissioner argued, "[T]he Department has the authority to request and review documents relating to [U.S. Financial Management's] prorating activities with respect to both California *and* out-of-state clients—if merely to determine whether those business activities are within the Department's jurisdiction . . . ."

In November 2007, the trial court heard oral argument on the matter. After hearing argument, the court stated that it would grant the petition. On December 10, 2007, the court entered an order entitled "ORDER TO PRODUCE: NUMBER ONE."[4] The trial court ordered U.S. Financial Management to produce the documents requested by the Commissioner's subpoena duces tecum, including a list containing the "contact information . . . of past and current out-of-state prorating clients," "executed applications, contracts or other agreements . . . entered into between [U.S. Financial Management] and past and current out-of-state prorating clients," "documents reflecting payment of settlement fees by past and current out-of-state prorating clients," and "scripts, brochures, advertising materials, summaries, booklets, illustrations, and other documents . . . describing [U.S. Financial Management's] services to past and current out-of-state prorating clients . . . ."

U.S. Financial Management timely appeals from the trial court's "ORDER TO PRODUCE: NUMBER ONE."

## III.

## DISCUSSION

A. *The trial court's "ORDER TO PRODUCE: NUMBER ONE" is appealable as a final judgment*

At the outset, we address whether this court has appellate jurisdiction to consider U.S. Financial Management's appeal.

---

[4] That same day, the trial court entered a separate order compelling U.S. Financial Management to produce various documents sought by the Commissioner related to U.S. Financial Management's past and current *California* clients. U.S. Financial Management has not appealed from this order.

In *State ex rel. Dept. of Pesticide Regulation v. Pet Food Express Ltd.* (2008) 165 Cal.App.4th 841 [81 Cal.Rptr.3d 486] (*State ex rel. Dept. of Pesticide Regulation*), the court noted, "Confusion exists regarding appealability of orders enforcing administrative subpoenas . . . ." (*Id.* at p. 849; compare, e.g., *Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485 [18 Cal.Rptr.2d 198] (*Millan*) [holding that "the better view is that 'orders requiring compliance with the subpoenas are appealable as final judgments in special proceedings . . . .' "] with *Bishop v. Merging Capital, Inc.* (1996) 49 Cal.App.4th 1803, 1809 [57 Cal.Rptr.2d 556] (*Bishop*) [concluding that orders compelling compliance with administrative subpoenas are not appealable].)

The *Bishop* court noted that an order compelling compliance with an administrative subpoena is not an appealable *order*. (*Bishop, supra*, 49 Cal.App.4th at p. 1806.) Further, the *Bishop* court suggested that such an order is not a final *judgment*, in light of the possibility of subsequent contempt proceedings to gain compliance with the order. (See *id.* at p. 1808 [stating that "any ruling rendered by this court would be in the nature of an advisory opinion," in light of the possibility of subsequent contempt proceedings].)

██ In following *Millan* and implicitly rejecting *Bishop*, the court in *State ex rel. Dept. of Pesticide Regulation* concluded that an order compelling compliance with an administrative subpoena is appealable as a final judgment: "[A] judgment is the 'final determination of the rights of the parties in an action or proceeding.' [Citation.] The statutory scheme [citation] provides for an original proceeding in the superior court, which results in an order directing the respondent to comply with the administrative subpoena. [Citations.] The court order enforcing the administrative subpoena is tantamount to a superior court judgment in mandamus which, with limited exceptions, is appealable under Code of Civil Procedure section 904.1. [Citation.] Whether the matter is properly characterized as an 'action' [citation] or a 'special proceeding' [citation], it is a final determination of the parties' rights. It is final because it leaves nothing for further judicial determination between the parties except the fact of compliance or noncompliance with its terms. [Citation.] The fact that an intransigent respondent may be subject to a contempt order does not mean the court order is not final, because the same possibility exists with injunctions and final judgments which form the basis for contempt citations. The purpose of any judicial order which commands or prohibits specific conduct is to make the sanction of contempt available for disobedience. This fact does not render such an order 'nonfinal.' Indeed, the contempt judgment is not appealable but must be reviewed, if at all, by writ, and therefore review of the underlying order can reliably be had only if that

order is appealable. [Citation.]" (*State ex rel. Dept. of Pesticide Regulation, supra*, 165 Cal.App.4th at p. 851.)

The *State ex rel. Dept. of Pesticide Regulation* court rejected the argument that an order compelling compliance with an administrative subpoena is akin to a nonappealable discovery order: "We . . . reject the Department's . . . argument that we should analogize to discovery orders in civil litigation, which are not considered final, appealable orders. Such discovery orders, however, are made in connection with pending lawsuits which have yet to be resolved. A discovery order does not determine all of the parties' rights and liabilities at issue in the litigation. The Department argues the same applies here, because even with the documents, the Department cannot impose administrative penalties unless an administrative hearing is held if such a hearing is requested. However, it is possible an administrative hearing may not be requested and, even if it is requested, it will not necessarily end up in court. In contrast to this case, pending civil litigation in which a discovery order occurs already involves the court and will continue to do so." (*State ex rel. Dept. of Pesticide Regulation, supra*, 165 Cal.App.4th at p. 852, fn. omitted.)

We agree with the court's analysis in *State ex rel. Dept. of Pesticide Regulation*. In this case, the trial court's order compelling compliance with the Commissioner's administrative subpoena constituted a final determination of the parties' rights, notwithstanding the possibility that further proceedings might be required to gain U.S. Financial Management's compliance with that order. (See *State ex rel. Dept. of Pesticide Regulation, supra*, 165 Cal.App.4th at p. 852.) As such, the order constitutes an appealable final judgment pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1). (See *State ex rel. Dept. of Pesticide Regulation, supra*, 165 Cal.App.4th at p. 849.)

B.   *By failing to raise the argument below, the Commissioner forfeited his right to argue that U.S. Financial Management is required to exhaust its administrative remedies*

In his respondent's brief, the Commissioner claims that U.S. Financial Management's appeal should be dismissed on the ground that it failed to exhaust its administrative remedies. Citing *Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816 [17 Cal.Rptr.2d 323] (*PERB*), the Commissioner further argues that U.S. Financial Management must wait to raise its jurisdictional objections to the Commissioner's subpoena until the completion of any administrative proceeding that the Commissioner may take based upon his investigation.

■ In *PERB*, the court held: "[T]he scope of judicial authority to inquire into the jurisdiction of an agency, as a predicate to denial of enforcement of an administrative subpoena, is governed by the general doctrine concerning the exhaustion of administrative remedies. A subpoena should be enforced regardless of objections based upon claimed defenses to the charges in the administrative proceeding unless those claims present a sufficient ground to overcome the ordinary rule that a litigant may not pursue a judicial remedy until the administrative agency has reached a final decision. Otherwise the doctrine concerning exhaustion would function fitfully, permitting litigants to short-circuit or cripple administrative proceedings based upon the happenstance that obtaining evidence needed to advance the administrative proceeding requires the assistance of the courts in enforcing a subpoena." (*PERB, supra*, 13 Cal.App.4th at p. 1825.)

While the *PERB* court noted that the doctrine of exhaustion of administrative remedies generally applies in proceedings involving an administrative subpoena, the court also noted that " 'There are . . . numerous exceptions to the rule including situations where the agency indulges in unreasonable delay . . . , when the subject matter lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the agency is incapable of granting an adequate remedy, and when resort to the administrative process would be futile because it is clear what the agency's decision would be.' " (*PERB, supra*, 13 Cal.App.4th at p. 1827, quoting *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 222 [239 Cal.Rptr. 470] (*Green*).)

We need not decide whether to follow *PERB*, nor whether the exhaustion of administrative remedies doctrine requires dismissal of this appeal, because the Commissioner failed to raise his claim of failure to exhaust administrative remedies in the trial court. The Commissioner has thus forfeited his right to assert this argument on appeal. (See *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 133 [68 Cal.Rptr.3d 568] (*Mokler*) ["The County May Not Assert Exhaustion of Administrative Remedies for the First Time on Appeal"].)

■ In *Mokler*, the court noted that although "earlier cases tended to view the exhaustion doctrine as invalidating a court's subject matter jurisdiction, thus allowing a defendant to raise it at any time . . . ," more recent cases have followed *Green, supra*, 194 Cal.App.3d at page 222, "in concluding a defendant waives the defense by failing to timely assert it." (*Mokler, supra*, 157 Cal.App.4th at p. 135.) While the Supreme Court in *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942] (*Abelleira*),

"declared the exhaustion of administrative remedies to be jurisdictional" (*Mokler, supra*, 157 Cal.App.4th at p. 133), the *Mokler* court held, "This does not mean . . . a party may raise the issue for the first time on appeal" (*ibid.*). This is because the *Abelleira* court "did not hold that the exhaustion doctrine implicated a court's subject matter jurisdiction . . . ." (*Mokler, supra*, 157 Cal.App.4th at p. 134.) Rather, the doctrine is " 'a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis*, and binding upon all courts.' " (*Mokler, supra*, 157 Cal.App.4th at p. 134, quoting *Abelleira, supra*, 17 Cal.2d at p. 293.)

The *Mokler* court further noted that there are strong jurisprudential reasons for requiring a litigant who wishes to assert the exhaustion doctrine to raise the claim in the trial court: " 'Application of the[] exceptions [to the exhaustion doctrine] may require "a qualitative analysis on a case-by-case basis with concentration on whether a [p]aramount need for agency expertise outweighs other factors." [Citations.] Application of a procedural doctrine subject to numerous exceptions and which may require case-by-case analysis is not the sort of issue which should fall outside the general rule of civil litigation that arguments and objections not raised and preserved in the trial court are waived on appeal.' " (*Mokler, supra*, 157 Cal.App.4th at p. 134, quoting *Green, supra*, 194 Cal.App.3d at p. 222.)

We find the *Mokler* court's reasoning to be persuasive. Accordingly, we conclude that by failing to raise the claim in the trial court, the Commissioner has forfeited his claim that the exhaustion of administrative remedies doctrine applies in this case.

## C. The trial court properly ordered U.S. Financial Management to comply with the Commissioner's subpoena

U.S. Financial Management claims that the Commissioner lacks jurisdiction under the Prorater Law to investigate its activities with respect to non-California residents. U.S. Financial Management further contends that both conflict of law principles and the federal Constitution preclude the Commissioner from undertaking such an investigation. U.S. Financial Management claims that the trial court therefore erred in ordering it to comply with the Commissioner's subpoena, insofar as the subpoena seeks records pertaining to U.S. Financial Management's transactions with non-California residents.

We review de novo, as a question of law, whether the trial court erred in compelling U.S. Financial Management's compliance with the Commissioner's subpoena. (See *State ex rel. Dept. of Pesticide Regulation, supra*, 165

Cal.App.4th at p. 854; accord, *E.E.O.C. v. Karuk Tribe Housing Authority* (9th Cir. 2001) 260 F.3d 1071, 1078.)

  1. *The Commissioner has jurisdiction under the Prorater Law to investigate U.S. Financial Management's activities with respect to non-California residents*

U.S. Financial Management claims that the Commissioner lacks jurisdiction under the Prorater Law to investigate its activities with respect to non-California residents.[5] U.S. Financial Management contends that the presumption against the extraterritorial application of laws applies because the Prorater Law does not expressly state that it governs transactions involving nonresidents.

  a. *Governing law*

    (i) *The Commissioner's investigatory powers under the Government Code*

Government Code section 11180 provides: "The head of each department may make investigations and prosecute actions concerning: [¶] (a) All matters relating to the business activities and subjects under the jurisdiction of the department." In order to conduct such an investigation, an agency may "[i]ssue subpoenas for the attendance of witnesses and the production of papers, books, accounts, documents, any writing as defined by Section 250 of the Evidence Code, tangible things, and testimony pertinent or material to any inquiry, investigation, hearing, proceeding, or action conducted in any part of the state." (Gov. Code, § 11181, subd. (e).)

    (ii) *The Prorater Law*

Section 12002.1 defines a "prorater" under the law. (See fn. 3, *ante*.) Section 12100 provides a list of the persons and types of transactions that are exempt

---

[5] U.S. Financial Management requests that this court take judicial notice of Assembly Bill No. 2611 (2007–2008 Reg. Sess.) and the bill's legislative history. U.S. Financial Management claims that the bill "would confirm that the Prorater Law in existence and under which the [Commissioner] issued its [s]ubpoena is not the proper law by which to monitor Appellants."

The bill was not enacted into law, and U.S. Financial Management has not demonstrated that the bill has any relevance to our analysis of the Commissioner's jurisdiction under the Prorater Law. (See *Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd.* (1986) 187 Cal.App.3d 379, 391, fn. 6 [231 Cal.Rptr. 861] ["a single unenacted bill which would have explicitly restricted the Division's mining jurisdiction is meaningless as an expression of legislative intent . . ."].) Accordingly, we deny U.S. Financial Management's motion for judicial notice. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257 [63 Cal.Rptr.3d 418, 163 P.3d 106] [matter to be judicially noticed must be relevant to a material issue].)

from the scope of the law. For example, services offered by persons licensed to practice law (§ 12100, subd. (c)), and services provided by persons licensed as certified public accountants (§ 12100, subd. (i)) may be exempt. Particular types of transactions may also be subject to an exemption. (See, e.g., § 12100, subds. (d), (h) [providing the Prorater Law does not apply to, "[a]ny transaction in which money or other property is paid to a 'joint control agent' for disbursal or use in payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in construction of improvements upon real property," or "[a] common law or statutory assignment for the benefit of creditors or the operation or liquidation of property or a business enterprise under supervision of a creditor's committee"].) Section 12101.5 provides, "In any proceeding under this law, the burden of proving an exemption or an exception from a definition is upon the person claiming it."

Section 12200 requires persons who propose to engage in prorating to obtain a license from the Commissioner: "No person shall engage in the business, for compensation, of selling checks, drafts, money orders, or other commercial paper serving the same purpose, or of receiving money as agent of an obligor for the purpose of paying bills, invoices, or accounts of such obligor, or acting as a prorater, nor shall any person, without direct compensation and not as an authorized agent for a utility company, accept money for the purpose of forwarding it to others in payment of utility bills, without first obtaining a license from the commissioner."

Sections 12300 through 12331 contain numerous provisions that regulate the practice of prorating. (See, e.g., §§ 12314, 12315 [prohibiting proraters from charging various fees], 12315.1 [requiring that creditors be given notice of the services being provided by a prorater].)

The Prorater Law specifically authorizes the Commissioner to conduct investigations and issue subpoenas. Section 12305 provides: "For the purpose of discovering violations of this division the commissioner may at any time investigate the business and examine the books, accounts, records, and files used therein, of any licensee, of any agent, and of any person who the commissioner has reason to believe is engaging in the business defined in this division." Section 12106, subdivision (b) provides: "For the purpose of any investigation or proceeding under this section, the commissioner or any officer designated by the commissioner may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda,

agreements, or other documents or records the commissioner deems relevant or material to the inquiry."

Section 12106 also outlines in part the Commissioner's investigatory powers. That section provides in relevant part:

"(a) The commissioner may do the following, at his or her discretion:

"(1) Make public or private investigations within or outside of this state necessary to determine whether any person has violated, or is about to violate, any provision of this division or any rule or order promulgated pursuant to this division, or to aid in the enforcement of the law."

(iii) <em>The presumption against the extraterritorial application of law</em>

In *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1059 [80 Cal.Rptr.2d 828, 968 P.2d 539] (*Diamond Multimedia Systems, Inc.*), the California Supreme Court described the presumption against extraterritoriality, as outlined in *North Alaska Salmon Co. v. Pillsbury* (1916) 174 Cal. 1 [162 P. 93]:

"[In *North Alaska Salmon Co. v. Pillsbury*] [a] worker who entered into a contract with a California corporation for employment as a fisherman was injured in Alaska. The Industrial Accident Commission awarded compensation. On the employer's appeal this court annulled the award, holding that the right to compensation was controlled by the applicable statutes, not the contract, and the statute did not give the commission jurisdiction to award compensation for out-of-state injuries.

█ "The court also stated: 'Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect. The intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred "from the language of the act or from its purpose, subject matter or history." ' (*North Alaska Salmon Co. v. Pillsbury, supra,* 174 Cal. at p. 4.) We found nothing in the Workmen's Compensation, Insurance and Safety Act to indicate that the compensation provisions of that law were intended to apply to injuries suffered in other jurisdictions and also noted that there was strong

authority that workers' compensation statutes are not to be given extraterritorial effect absent an express declaration that do so. On that basis we held that the commission had exceeded its jurisdiction. (*Id.* at p. 7.)" (*Diamond Multimedia Systems, Inc., supra,* 19 Cal.4th at p. 1059.)

■ The *Diamond Multimedia Systems, Inc.,* court held that the presumption against extraterritoriality did not preclude a non-California resident from prevailing on a cause of action alleging a violation of Corporations Code section 25400 based on conduct occurring in California: "The presumption applied in [*North Alaska Salmon Co. v. Pillsbury*] to a workers' compensation statute has never been applied to an injured person's right to recover damages suffered as a result of an unlawful act or omission committed in California. Civil Code section 3281 provides that '[e]very person who suffers detriment' from unlawful acts or omissions in California may recover damages from the person at fault. Product liability actions against California manufacturers by persons injured elsewhere by a defective product manufactured in California are a prime example of actions authorized by Civil Code section 3281. [Citations.] We see no reason to conclude that the Legislature intended a different result for actions based on violation of section 25400." (*Diamond Multimedia Systems, Inc., supra,* 19 Cal.4th at pp. 1059–1060, fn. omitted.)

b. *Application*

The Prorater Law contains broad language concerning both those persons who fall within its scope, and the Commissioner's investigatory powers. (See, e.g., §§ 12002.1, 12200, 12106, 12305.) None of these provisions, nor any other provision of the Prorater Law, states that the law is inapplicable to transactions involving non-California residents. U.S. Financial Management does not contend otherwise, and does not claim that any specific provision of the Prorater Law precludes the Commissioner from investigating it with respect to its activities with nonresidents.

Rather, citing the presumption against extraterritoriality, U.S. Financial Management contends, "For [the Commissioner] to have authority to regulate non-California resident activity, the Prorater Law must clearly express an intention to *regulate outside of California.*" (Italics added.) However, as is suggested by the italicized portion of the preceding sentence from U.S. Financial Management's brief, the presumption against extraterritoriality applies only in considering whether California law governs conduct that occurs *outside* of California. (See *Diamond Multimedia Systems, Inc., supra,* 19 Cal.4th at p. 1060, fn. 20 ["The presumption against extraterritoriality is

one against an intent to encompass *conduct* occurring in a foreign jurisdiction in the prohibitions and remedies of a domestic statute."].)

In this case, U.S. Financial Management has failed to demonstrate that the Commissioner's subpoena seeks documents relevant to *conduct* occurring outside of California. In the trial court, U.S. Financial Management suggested that the subpoena sought some documents related to *conduct* that occurred outside California.[6] For example, U.S. Financial Management stated that the subpoena sought "documents related to non-California residents who *contracted with [U.S. Financial Management] outside of California . . . .*" (Italics added.) However, on appeal, U.S. Financial Management does not raise this argument. Rather, U.S. Financial Management claims only that the presumption against extraterritoriality precludes the Commissioner from investigating *any* of its activities that involve nonresidents.[7] Therefore, we need not consider whether the presumption against extraterritoriality precludes the Commissioner from seeking documents related to the out-of-state conduct of U.S. Financial Management and its non-California resident clients.

■ The presumption against extraterritoriality does not preclude the application of California law to conduct that occurs in California, even where that conduct involves non-California residents. (See *Diamond Multimedia Systems, Inc., supra,* 19 Cal.4th at p. 1059 [rejecting claim that presumption against extraterritorial effect precluded application of California law because "the conduct which gives rise to liability under [the relevant statute] occurs in California"]; accord, *Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 224–225 [85 Cal.Rptr.2d 18] [concluding that non-California residents may be able to state claims of unfair competition arising from conduct occurring in California and stating, "The linchpin of [*Diamond Multimedia Systems, Inc.'s*] analysis is that state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California."].) Accordingly, we conclude that the

---

[6] In contrast, the Commissioner claimed that all of U.S. Financial Management's business originated in California.

[7] For example, in its reply brief, U.S. Financial Management summarizes its claim as follows: "[U.S. Financial Management's] argument is very narrow. The [Commissioner] has stated that [he] issued the [s]ubpoena to discover violations or potential violations of the Prorater Law. That is the only basis for the [s]ubpoena. Taking that basis, [U.S. Financial Management] argue[s] that, as a matter of law, there can be no violations or potential violations of the Prorater Law where Appellants contract with non-California residents. These non-California residents are protected by the debt settlement licensing statutes of their states. There is nothing in the Prorater Law that states it has extraterritorial effect. Thus, the [Commissioner] is without jurisdiction to demand documents solely related to non-California residents, that cannot be related to a violation of the Prorater Law."

presumption against extraterritoriality does not preclude enforcement of the Commissioner's subpoena.

U.S. Financial Management also appears to suggest that the fact that other states have adopted licensing and regulatory laws that apply to the residents of their states supports its argument that "non-California consumers . . . are not covered by California's Prorater Law." However, we emphasize that we hold only that the Commissioner has jurisdiction to *investigate* potential violations of the Prorater Law with respect to U.S. Financial Management's transactions with non-California residents. This appeal does not require us to determine whether California law would apply if the Commissioner were to bring an action against U.S. Financial Management based on alleged violations of California law in its transactions with nonresidents. (See *Younger v. Jensen* (1980) 26 Cal.3d 397, 404 [161 Cal.Rptr. 905, 605 P.2d 813] ["The issue posed by the trial court's order is not the validity of hypothetical steps California might take to enforce its antitrust laws but rather the power of the state's chief law officer to investigate possible violation of law."].) Whether California law would apply in an action against U.S. Financial Management for a violation of California law involving nonresidents would require an application of the choice of law principles discussed in part III.C.2.a., *post*, which we have no occasion to apply in this appeal. However, for reasons also stated in part III.C.2.a., *post*, we do hold that U.S. Financial Management has failed to demonstrate that any conflict of law precludes the Commissioner from *investigating* its transactions with non-California residents.

> 2. *U.S. Financial Management fails to demonstrate that either conflict of law principles or the United States Constitution precludes enforcement of the Commissioner's subpoena*

U.S. Financial Management claims that allowing the Commissioner to investigate its activities with respect to non-California residents would violate conflict of law principles, as well as the full faith and credit clause and the commerce clause of the United States Constitution.

> a. *Conflict of law principles*

U.S. Financial Management claims that allowing the Commissioner to investigate its actions with respect to nonresidents would violate "conflict of law principles," by intruding upon the rights of other states to regulate the business practices of debt settlement companies that contract with their residents. For example, U.S. Financial Management states in its brief, "If Florida . . . has a statute that governs the conduct of a debt settlement company who contracts with consumers who reside in Florida, then how can

the California agency ignore this statute and instead regulate the conduct toward the Florida resident under the California Prorater Law?"

In *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 614 [236 Cal.Rptr. 605] (*Clothesrigger*), this court concluded that the trial court erred in denying a motion to certify a class action that would have included non-California residents who were alleging, among other causes of action, unfair business practices under California law. The *Clothesrigger* court concluded that the "defendant had identified no interest of any other state that might be affected by extending California's law to the injured nonresidents, and recogniz[ed] that 'California may have an important interest in applying its law to punish and deter the alleged wrongful conduct.' " (*Diamond Multimedia Systems, Inc., supra*, 19 Cal.4th at pp. 1064–1065, quoting *Clothesrigger, supra*, 191 Cal.App.3d at p. 615.)

■ Further, the *Clothesrigger* court noted that the mere fact that two states have differing laws with regard to a general subject area is not a sufficient basis on which to conclude that there is an actual conflict of law that would preclude the forum state from applying its own law: " 'Analysis of a choice of law question proceeds in three steps: (1) determination of whether the potentially concerned states have different laws, (2) consideration of whether each of the states has an interest in having its law applied to the case, and (3) if the laws are different and each has an interest in having its law applied (a "true" conflict), selection of which state's law to apply by determining which state's interests would be more impaired if its policy were subordinated to the policy of the other state. [Citations.]' " (*Clothesrigger, supra*, 191 Cal.App.3d at p. 614.)

U.S. Financial Management notes in its brief that several states have enacted laws that regulate debt settlement companies. However, U.S. Financial Management fails to identify any provisions of any such laws that are in conflict with the trial court's order enforcing the Commissioner's subpoena in this case. Accordingly, we conclude that U.S. Management has failed to demonstrate that the application of conflict of law principles requires reversal of the judgment. (See *Clothesrigger, supra*, 191 Cal.App.3d at p. 615 [noting that "although defendants asserted other states' laws differed from California's," trial court erred in failing to "analyze the possible interests of California and other states"].)

b. *Full faith and credit clause*

U.S. Financial Management also claims that allowing the Commissioner to investigate it with respect to its actions with non-California residents would violate the full faith and credit clause. (U.S. Const., art. IV, § 1.)

■ Article IV, section 1 of the United States Constitution provides, in pertinent part, that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." " 'The Full Faith and Credit Clause does not compel "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." ' [Citation.] Indeed, as the Supreme Court in *Nevada v. Hall* [(1979)] 440 U.S. 410 [59 L.Ed.2d 416, 99 S.Ct. 1182], observed, the full faith and credit clause does not require a state to apply another state's statutory law in violation of its own legitimate public policy. [Citations.]" (*In re Laura F.* (2000) 83 Cal.App.4th 583, 593 [99 Cal.Rptr.2d 859].)

"In *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797 [86 L.Ed.2d 628, 105 S.Ct. 2965], the United States Supreme Court held that a forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or full faith and credit clause if the state has a ' "significant contact or significant aggregation of contacts" ' to the claims of each class member such that application of the forum law is 'not arbitrary or unfair.' " (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 919 [103 Cal.Rptr.2d 320, 15 P.3d 1071].)

California has sufficient contacts with U.S. Financial Management to constitutionally apply California law to its activities. Among other contacts, U.S. Financial Management is a California corporation whose principal place of business is San Diego, California. (See, e.g., *Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1852 [46 Cal.Rptr.2d 696] [California had strong contacts with corporation where corporation maintained its principal office in California, conducted business in California, and employed California residents].) Thus, even assuming that U.S. Financial Management had identified a provision of a law of another state that precluded the trial court's enforcement of the subpoena, California is not constitutionally compelled by the full faith and credit clause to apply such a law in ruling on the Commissioner's request to subpoena U.S. Financial Management's records.

### c. *Commerce clause*

■ U.S. Financial Management also asserts that if this court were to conclude that the Commissioner may investigate it with respect to transactions involving non-California residents, "this court would be faced with additional Constitutional challenges," including a claim that the Prorater Law violates the commerce clause (U.S. Const., art. I, § 8, cl. 3) because "the

states have already enacted differing laws." However, the only cases that U.S. Financial Management cites in support of this argument involve the question whether the commerce clause precludes a state from regulating a defendant's "business practices in *other* states." (*RLH Industries, Inc. v. SBC Communications, Inc.* (2005) 133 Cal.App.4th 1277, 1288 [35 Cal.Rptr.3d 469], italics added; see also *Healy v. The Beer Institute* (1989) 491 U.S. 324, 336 [105 L.Ed.2d 275, 109 S.Ct. 2491] [" 'Commerce Clause . . . precludes the application of a state statute to commerce that takes place *wholly outside of the State's borders* . . . .' " (italics added)].) In this case, U.S. Financial Management has not demonstrated that the Commissioner seeks to investigate conduct that took place *outside* of California. Its commerce clause argument thus fails. (See *Diamond Multimedia Systems, Inc., supra,* 19 Cal.4th at p. 1063 [rejecting claim that statute violated commerce clause as an impermissible burden on interstate commerce where the statute "regulate[d] only . . . conduct in California"].)

> 3. *The trial court did not err in ordering compliance with the subpoena, on the ground that the purpose of the subpoena has already been fulfilled*

U.S. Financial Management claims that the trial court erred in enforcing compliance with the Commissioner's subpoena because any "violation or potential violation of the Prorater Law has already been determined." U.S. Financial Management notes that it has taken corrective action to ensure its compliance with the Prorater Law with respect to California consumers, that it has complied with the Commissioner's requests, as related to California consumers, notwithstanding the existence of a "great debate" as to whether the Prorater Law applies to its business, and that it has provided "ample evidence" regarding its compliance with one of the provisions of the Prorater Law.

The Prorater Law does not provide for self-regulation among entities engaged in prorating. On the contrary, the Commissioner is expressly authorized to investigate violations of the Prorater Law. (§ 12305.) Thus, the fact that U.S. Financial Management has already taken, in its words, a "corrective step" in returning certain funds to California consumers, does not preclude the Commissioner from investigating the company with respect to other potential violations. Further, whatever admissions U.S. Financial Management may have made with respect to its conduct as to California residents does not preclude the Commissioner from investigating its actions with respect to nonresidents. Finally, the existence of a "great" debate about the applicability of the Prorater Law to U.S. Financial Management's business would not be a sufficient reason to hold that the trial court was required to refuse to enforce the Commissioner's subpoena.

## IV.

## DISPOSITION

The judgment is affirmed.

McConnell, P. J., and McIntyre, J., concurred.